## SEILER *v.* STATE, EX REL. BOARD OF COMMISSIONERS.

[No. 19,892.   Filed January 9, 1903.   Rehearing denied May 22, 1903.]

COUNTIES.—*County Board of Review.—County Auditor.—Compensation.*— The act of 1895 (Acts 1895, p. 74) provides that the county board of review "shall be composed of the county assessor, county auditor and county treasurer, and two freeholders to be appointed by the judge of the circuit court, who shall each be paid out of the county treasury, the sum of $3 for each and every day while they are acting as members of said board." *Held,* that the county auditor is entitled to the per diem compensation the same as other members of the board who are not county officers.  *pp. 605-611, 622-627.*

SAME.—*County Board of Review.—County Auditor.—Compensation.— Statutes.—Repeal.*—The act of 1895 (Acts 1895, p. 74), fixing a compensation of $3 a day to county auditors for services on the board of review, is not repealed by the fee and salary law of 1895 (Acts 1895, p. 319) enacted ten days thereafter, nor does such later act require a county auditor to tax and charge the amount which he was allowed, under the former statute, for his services as a member of the board of review, as a fee in favor of the county, and when the money was received by him, to return it to the treasurer as the property of the county.  *pp. 611-622.*

From DeKalb Circuit Court; *E. D. Hartman,* Judge.

Action by the State on the relation of the board of commissioners of DeKalb county against Frank P. Seiler. From a judgment in favor of plaintiff, defendant appeals. Transferred from Appellate Court, under §1337o Burns 1901.   *Reversed.*

*Frank S. Roby, S. A. Harper, E. D. Salsbury, R. O. Hawkins* and *H. E. Smith,* for appellant.

*P. V. Hoffman, D. M. Link, R. K. Kane* and *W. A. Ketcham,* for appellee.

JORDAN, J.—The board of commissioners of the county of DeKalb instituted this action to recover of appellant $78, which amount he had previously received from the treasury of that county in payment of services rendered by him as a member of the county board of review.   Appellee suc-

ceeded in obtaining a judgment against him for that amount, from which this appeal is prosecuted. The errors assigned are that the court erred in overruling the demurrer to the first paragraph of the complaint, and in denying appellant's motion for a new trial.

The complaint is in two paragraphs. The first charges that appellant was the duly elected and qualified auditor of DeKalb county, Indiana, and as such auditor he, by virtue of his office, served as a member of the board of review of said county in the year of 1899; that for such services he was allowed and received the money in question from the treasury of that county; that under the law he was chargeable with the duty of having the amount credited to the county officers' fund, but in violation of this duty he drew the money from the said treasury as due to him for his services upon said board, and thereafter unlawfully appropriated and converted the same to his own use, etc. The second paragraph alleges generally that the defendant is indebted to the plaintiff in the sum of $78 for money received by him for the use of said plaintiff.

The undisputed facts, as established by the evidence, show that appellant was the duly elected and qualified auditor of DeKalb county, Indiana, and while the incumbent of that office, during the year 1899, he served for a period of twenty-six days as a member of the board of review of that county. Prior to his entering upon the discharge of his duties as such member he took and subscribed the oath provided by the statute. After performing the duties as a member of said board for the time mentioned he presented a claim for the amount due him for his said services to the board of commissioners of said county. This claim the board duly allowed, and directed that an order for the amount thereof, to wit, $78, be drawn upon the county treasurer in favor of appellant. This warrant was accordingly drawn and presented by him to the county treasurer, and paid out of the funds of the county. He received the

money under the claim that it was due and belonged to him, and thereafter he refused on demand to turn the amount back into the treasury as belonging to the county officers' fund.

The sole question involved is whether appellee is entitled to the money which it seeks, under the facts, to recover of appellant. The contentions of the latter's counsel are: (1) That in serving as a member of the board of review he was acting independently of the office of auditor, and was not discharging the duties as a member of the board by virtue of his holding said office, consequently, the contention is, that the fee and salary law of 1895, in respect to the fees and salaries of county officers, does not apply to or control the question involved; (2) if it can be said that appellant, while serving as a member of the board of review, was in discharge of duties imposed upon him as auditor, then under this view the above salary statute of 1895 can not be construed so as to require him to turn back into the county treasury the per diem compensation which he received for acting as a member of the board of review.

The contentions of appellee's counsel are: (1) That the statute under which appellant was allowed and received the money in controversy does not intend to award any compensation to any of the members of the county board of review, except the two freeholders appointed by the judge of the circuit court as authorized by the act of 1895 amending the tax statute of 1891; (2) that appellant, in serving as a member of the board, was only discharging duties imposed upon him as auditor; therefore the per diem allowance for serving thereon must be considered as a fee, which, under the requirements of §§21, 116 and 136, of the act of 1895, (Acts 1895, p. 319, §§6426, 6522, 6540 Burns 1901), should be turned back into the county treasury as a part of the county officers' fund.

While much may be said in support of the first contention of appellant, to the effect that while he was serving as

a member of the board he was not discharging duties *ex officio* as county auditor, nevertheless, we may, *arguendo,* concede, without deciding, the proposition that in acting as a member of the board of review he was serving thereon *ex officio,* and treat the question herein involved in regard to the title to the money from that standpoint or upon that theory, as the ultimate conclusion reached, in our opinion, must be the same, upon either view of the case.

Section 114 of the tax statute of 1891 (Acts 1891, p. 199) provided that: "There shall be an annual board for the review of all assessments and the equalization of the valuation of real and personal property in each county. Such board shall be composed of the county assessor, county auditor and county treasurer. The county assessor shall be president, and the county auditor secretary of said board, which shall be known as the 'County Board of Review'." This section conferred numerous powers upon the board, and exacted of it the performance of numerous duties. The statute provided that before entering upon the discharge of their duties, each member should take and subscribe an oath for the faithful and impartial discharge of his duties as a member of said board. This oath required each member to be sworn to support the federal and the state Constitutions, and faithfully and impartially to discharge his duty as a member of the board of review, and that he would, according to the best of his knowledge and judgment, assess, review, and equalize the assessments of the property of the county, etc. Appeals were allowed from the decisions of the board to the state board of tax commissioners.

The legislature at its session of 1895 (Acts 1895, p. 74, §8532 Burns 1901) amended §114 of the aforesaid tax law, and by such amendment the following provision, which we have embraced in italics, was added to the section: "Such board shall be composed of the county assessor, county auditor and county treasurer, *and two freeholders to be appointed by the judge of the circuit court, who shall each*

*be paid out of the county treasury, the sum of $3 for each*
*and every day while they are acting as members of said*
*board."* This amendatory act was approved March 1, 1895,
and by virtue of an emergency clause was in full force and
effect from and after its passage. The amendatory act pre-
scribed the same oath to be taken by each member of the
board, as originally provided; and it substantially invests
this body with the same powers, and requires it to perform
the same duties, as were originally prescribed, except the
provision in regard to its power to punish for contempt of
its authority is eliminated from the section as amended. A
county board of review, as held by the decisions of this
court, is a tribunal said to possess *quasi* judicial powers,
and performs extraordinary services. *State* v. *Wood,* 110
Ind. 82; *Senour* v. *Matchett,* 140 Ind. 636; *Satterwhite*
v. *State,* 142 Ind. 1.

Under the provisions of the tax law creating the board,
three members thereof constitute a quorum for the transac-
tion of business; and it is authorized, when necessary, to
sit for twenty days in each year, and in the year when real
estate is required to be appraised it may sit for a period of
thirty days. The place fixed by the statute for the board
to hold its sessions is at the court-house, in the room of the
county commissioners. During its sessions the county au-
ditor not only serves as a member thereof, but is also desig-
nated by the statute to serve as its secretary. It is claimed
that in the discharge of these duties, under the circum-
stances, he must necessarily be absent from the auditor's
office, which, under §7971 Burns 1901, is required to be
kept open at all times during business hours. While per-
forming the services enjoined upon the auditor as a member
and secretary of the board of review, he must also discharge
his duty to the public by keeping the office of auditor open
for the transaction of the business thereof. It is insisted
that this latter duty, if performed during the sessions of

the board, must, under the circumstances, necessarily be discharged through the agency of a deputy, and the latter must be remunerated out of the pocket of the auditor, as he is allowed nothing under the salary act for deputy hire. Therefore the argument is advanced in support of the justice of the per diem allowance that it is not unreasonable to presume that the legislature took these matters into consideration, and awarded the same to the auditor, as a member of the board, in view of his being required to employ a deputy while attending the sessions of the board, in order that the other and usual duties of his office might be discharged. As to what prompted the legislature to award the per diem to the auditor for services rendered by him as a member of the board of review, we need not stop to inquire, but may content ourselves with the fact that it is expressly declared by the statute in question that each member of the board shall be paid out of the county treasury the sum of $3 for each and every day while acting as a member thereof. In regard to this feature of the case it may be said in the language of the maxim, *ita lex scripta est*—the law is so written—and must be accepted and enforced accordingly. The contention that if the fee and salary act is so construed as to permit appellant to retain as his own the per diem compensation in question, then such an interpretation of the law will result in doubly compensating him; that is to say, he will be allowed the per diem compensation for acting as a member of the board of review, in addition to the annual salary attached to the office of auditor. This argument is without force in the solution of the question involved, for, had the legislature intended to deny a county auditor the right to the former compensation, it could have easily, by the employment of but very few words in either statute, expressed its will in this respect. The authorities assert that where a person who is the incumbent of a public position is required by law to perform the duties of another position, not incompatible with the first, he, in the absence

of any provision of the law to the contrary, is entitled to receive the compensation attached by law to each of the positions. *State, ex rel.,* v. *Harrison,* 116 Ind. 300; *In re Conrad,* 15 Fed. 641; *United States* v. *Saunders,* 120 U. S. 126, 7 Sup. Ct. 467, 30 L. Ed. 594; Mechem, Pub. Officers, §§859, 863. The first contention of counsel for appellee contravenes the plain provision of §114 of the tax law as amended, and is without support.

We may next inquire if the provisions of the fee and salary law of 1895 have so changed or modified the statute awarding the per diem as to require the auditor, after he has received the amount thereof, to report it and turn the money back into the treasury as belonging to the county, to be credited to the auditor's cost or fund. A solution of this question depends upon an interpretation of the several provisions of that statute, especially §116, which it is claimed controls the question in favor of appellee. The act is entitled: "An act fixing the compensation and prescribing the duties of certain State and county officers, fixing certain fees to be taxed in the offices and the salaries of officers therein named," etc. Acts 1895, p. 319, §6426 *et seq.* Burns 1901. It will be observed that this statute was passed by the same legislature about ten days after that body had enacted the amendment to the tax statute by which the per diem compensation was awarded to the members of the county board of review. The contention, therefore, is that, by reason of the fact that the fee and salary law is the later in course of time, the provisions thereof must be construed and held as having changed and modified the provisions of the amendment to the tax statute so as to require the auditor to tax and charge the per diem allowance provided and awarded him for serving as a member of the board as a fee in favor of the county to be credited to the auditor's costs as provided by §115 of the salary act, and when the same is received by him from the county treasurer, he is, under the provisions of said statute, required to pay the

money into the county treasury as the property of the county. The legislation in regard to county officers is introduced by §21 of the salary act which in terms provides that "The county officers named herein shall be entitled to receive for their services, the compensation specified in this act, which compensation is graded in proportion to the population and the necessary services required in each of said several counties, subject, * * * and they shall receive no other compensation whatever."

Section 115, *supra,* requires county auditors to tax and charge upon proper books the fees and amounts provided by law on account of services performed by said officers, and "The fees and amounts so taxed shall be designated 'auditor's costs,' but they shall in no sense belong to, or be the property of the auditor, but shall belong to and be the property of the county. They shall tax and charge: For copies of all records, for each 100 words, ten cents: For writing affidavits and swearing affiant thereto, twenty-five cents." The further enumeration of services to be performed by the auditors, together with the fees to be charged for the same is continued in this section.

Section 116 reads as follows: "Where the auditor is required by law to perform any service not specially mentioned in this act, for which services the auditor shall be entitled under the law existing before the taking effect of this act, to tax, charge or receive any fee or compensation in his own favor for such service, he shall hereafter tax the amount on account of such service in favor of the county, and the same shall be collected and paid into the county treasury as elsewhere provided in this act."

Section 124 requires the county auditor, together with other officers therein mentioned, to make a quarterly sworn report on the days therein designated specifically showing the amount of fees collected during the preceding three months, and to pay the amount shown by such report to the county treasurer, and take the latter's receipt for the

amount; and the auditor is required to give to the officer filing such receipt in his office a quietus for the amount so paid, and the money so turned over into the county treasury is to be treated as distinct and separate funds, known as auditor's funds, etc.

Section 131 makes it the duty of the auditor, within sixty days from the time any costs are taxed or charged in his office for services performed by him or by the sheriff, to issue fee bills for the same to the sheriff of the county for the collection thereof.

Section 136 declares that the act shall not be so construed as to allow the officers therein named the salaries therein provided, and also the fees required to be taxed, "except as otherwise specified."

Section 138 declares that all laws in conflict with the act are repealed to the extent of such conflict.

All of the provisions of the act in question must be construed together, and harmonized with each other, so far as possible. Sections 21 and 136, when so construed, emphasize and make clear the point that the respective officers named in the act shall not, in addition to their annual salary as fixed, be allowed the fees which are required to be taxed by them for official services performed, as provided under said act; or, in other words, the employment of any constructive method which will result in awarding to the officer such fees as his own, which he is required to tax and charge, is expressly prohibited, except as may be otherwise specified.

Section 138 shows that it was the purpose of the legislature to repeal all other laws in conflict with the provisions of the act, only to the extent of such conflict.

It is certainly evident that the provisions of the statute which fix and allow a per diem to remunerate the members of the board of review for serving thereon authorize each thereof, when his claim for such services has been audited by the board of commissioners, to draw the money from the

county treasury for his own individual use. Therefore, if the provisions of the per diem law in question have been so changed or modified by some part of the fee and salary law as to require the auditor, after he has drawn the money allowed him under said act from the treasury of the county, to report the amount as a fee collected by him, and turn it back into the county treasury, as provided by §124, *supra,* such change or modification in respect to the disposition of the money must be implied by reason of an irreconcilable conflict between the former statute and some provision or provisions of the fee and salary act of 1895. Repeals or modifications of statutes by implication are not favorably recognized by the law. Therefore, if upon any reasonable ground the provisions of these two independent statutes can be reconciled with each other so as to allow both to stand and operate as enacted, it is the duty of a court, in obedience to the requirements of well settled rules, so to adjudge and hold. There is no provision in the salary law in question which expressly professes either to repeal or modify the per diem provision of the tax statute. Certainly, then, we would not be justified in hastily concluding that the legislature, which at the same session enacted both of these laws, intended, under some provision of the salary act, to require the county auditor to tax and charge the amount which he was allowed for his services as a member of the board of review as a fee in favor of the county, and, when the money was received, to return it to the treasurer as the property of the county. The rule is well affirmed by the decisions of this court that where two statutes, as in the case at bar, are passed at the same session of the legislature, they should be construed together, and if possible each ought to be permitted to stand and be enforced as enacted; and it is only where there exists an irreconcilable conflict or repugnancy between the two acts that a court is authorized to adjudge that the later repealed, changed, or modified the earlier by

implication.    Shea v. City of Muncie, 148 Ind. 14, and cases there cited.

It is especially insisted that by virtue of §116, supra, the law allowing the per diem to appellant for his services in question is so modified or changed as to deny him the right to retain it as his own after he has legally received it in the first instance.    This section, it will be observed, declares that where the auditor is required by law to perform any service not specially mentioned in the law of which it forms a part, for which services he "shall be entitled under the law existing before the taking effect of this act, *to tax, charge or receive any fee or compensation in his own favor for such service, he shall hereafter tax the amount on account of such service in favor of the county, and the same shall be collected and paid into the county treasury as elsewhere provided in this act."*    (Our italics.)

The only provision of the salary law in question to which the clause "as elsewhere provided in this act" can be said to refer is §124, supra, in which, as we have seen, the auditor is required to make quarterly reports of the amount of fees collected by him, and pay the same over to the county treasurer.    Consequently, under the circumstances, §116 may be treated or construed in the light of or in connection with §124.    We may note in our efforts to discover the legislative intent or purpose in making §116 a part of the act of 1895, the fact that it is but a reënactment, letter for letter, of §117 of the fee and salary law of 1891 (Acts 1891, p. 424), from which, with some exceptions, the act of 1895 is apparently framed.    The section in controversy was manifestly incorporated into the salary statute of 1891 for the purpose of exacting of auditors affected by that act the duty of thereafter taxing in favor of the county all compensatory fees for services performed by them for persons under laws existing after the taking effect of said salary act.    Such fees no longer were to be taxed in favor of the auditors, but were to be taxed in favor of the county, and when collected the amount

thereof was to be turned into the county treasury. Of course this provision of the act of 1891 had no reference to laws thereafter enacted by the legislature, but was simply intended to control the disposition of fees authorized to be taxed and charged under laws then existing. As previously shown, the amendatory act allowing a per diem to members of the board of review was passed but a few days prior to the enactment of the salary law of 1895. The result of the former, after it went into force, which was on the day of its passage, in no manner affected or changed §117, then still in force as a part of the salary law of 1891. That section and the section of the tax statute as amended each stood independently of the other. One operated to allow to each member of the county board of review a per diem compensation, to be received by him in his own right, while the other operated to deny the right of a county auditor to tax and charge as his own any fee prescribed to compensate him for official services performed under laws existing at the time the salary act of 1891 went into effect. Under the circumstances, then, in the absence of any provision in the salary act of 1895 expressly showing that it was the purpose or intent of the later law to change or modify in some manner the provisions of the earlier statute allowing the per diem to the auditor as one of the members of the board, it would be unreasonable to suppose that the legislature incorporated §117 of the act of 1891 into that of 1895, with the intent or for the purpose of changing the tenor and effect of the amendment of the tax statute in so far as it provided a per diem compensation in favor of the auditor for serving, as required, as a member of the board of review. The thing which §116 designates or declares shall be paid into the county treasury when collected by the auditor is a fee authorized to be charged and taxed under existing laws by the auditor for official services performed. Such fees are to be thereafter taxed and charged as prescribed by §115 of the act. To assert that §116, when con-

strued along with §124 of the same act, shows that the legislature intended that the per diem amount awarded by the tax law should be regarded as fees to be taxed and charged by the auditor upon the proper books of his office, and, when the amount of money accruing therefrom is drawn by him from the county treasury, he must report the same and turn it back to the treasury as provided by §124, certainly would seem to lead to an absurdity or impress the statute with an inconsistency. The prime object in construing statutes is to ascertain and carry out the true intent of the legislature. In construing an act a court should not adopt a view which will impute inconsistency or absurdity to the action of the legislative department. Words and phrases employed in the law must be considered in their literal and ordinary signification, and where technical words and phrases are used which have a peculiar and appropriate meaning, these must be understood according to their technical import, unless in so doing the intent of the legislature will be defeated. §240 Burns 1901, §240 Horner 1901; *Mayor, etc., v. Weems,* 5 Ind. 547; *Storms v. Stevens,* 104 Ind. 46; *Stout v. Board, etc.,* 107 Ind. 343; *Massey v. Dunlap,* 146 Ind. 350; *Hockemeyer v. Thompson,* 150 Ind. 176.

By the plain and express language of §124, which, as previously said, is manifestly the provision referred to and intended by §116 under the clause therein, "as elsewhere provided in this act," it is declared to be the duty of the auditor to report and pay over to the county treasury, to become a part of the "auditor's fund, the amount of fees collected during the preceding quarter." We must assume that the legislature advisedly and understandingly employed the words "tax" and "fee" or "fees" in their usual sense, or in accordance with the appropriate and legal meaning of these terms; hence, in the interpretation thereof, we must be guided by and observe the rule to which we have hereinbefore referred. The word "tax," as a verb, when used in respect to fees or costs, is defined to mean "To as-

sess, fix, or determine judicially, the amount of; as to tax the cost of an action in court." Webster's Int. Dictionary. Anderson's Law Dictionary defines the word to mean, "To assess, adjust, fix, determine; as, to tax the items and the amount of costs in a case."

When the auditor has taxed and charged the fees upon the books of his office as prescribed by §115 of the salary act, he may be said to have assessed and determined the amount of the fees allowed by law in the particular matter in which he has rendered official services. For example, "For copies of all records, for each 100 words, ten cents." "For transferring from land description to lot, each lot five cents." The amount of such fees, among others enumerated in that section, when collected by fee bill or otherwise, must be reported and paid over to the county treasurer as exacted by §124. This latter section does not profess to require him to report and pay over to the county treasurer money accruing otherwise than from the fees of his office. The word "fee," as used in the statute, had at the time of the passage thereof a well defined meaning and import; and to this we must adhere, under the rule previously asserted, unless by so doing the intent of the legislature will be defeated. It, in reason, can not be said that the word "fee" or "fees," as employed in the act in controversy, should be accorded a broader or different meaning than is usually given the term in statutes of a similar character or import as the one in question, so as to require a court to hold that the legislature intended the per diem compensation in dispute to be regarded as a fee to be taxed and charged as such in favor of the county, and thereafter the amount be turned back into the county treasury from which it was received.

Let us examine and ascertain from a proper source what the legislature meant by the use of the term in question. In *Cowdin* v. *Huff,* 10 Ind. 83, the salary of a judge of the common pleas court was involved. This court in that appeal, in determining the meaning and import of the terms

"salary," "fees," "per diem allowance," "wages," etc., said: "There are now, and were, at the adoption of our Constitution, at least three modes in use of compensating persons engaged in public service, viz., fees, salaries, and wages. These modes are all different, each from the other; and the difference between them has been immemorially well understood. Fees are compensations for particular acts or services; as the fees of clerks, sheriffs, lawyers, physicians, etc. Wages are the compensation paid, or to be paid, for services by the day, week, etc., as of laborers, commissioners, etc. Salaries are the per annum compensation to men in official and some other situations." In considering the provisions of the Constitution in relation to the methods thereunder of compensating public officers, the court further said: "It does provide, in effect, that judges of the supreme and circuit courts shall be paid by salary. Art. 7, §13. It makes no provision as to the compensation of judges of the court of common pleas. These judges, therefore, might be paid by fees, as are justices of the peace; or by per diem allowance, wages, as were probate judges under the old Constitution; or by salary, as are the present judges of the circuit and supreme courts." See, also, *Board, etc.,* v. *Wasson,* 74 Ind. 133; Anderson's Law Dict., under "fee;" Bourvier's Law Dict., under "fee."

An allowance fixed by law at a definite amount per day, to compensate a person for discharging public duties, certainly can not be regarded as a fee, within the accepted meaning of that term, but falls more properly within the definition of the term wages. As well might the per diem allowance fixed by law to remunerate grand and petit jurors for the services performed by them, or the per diem allowed to county superintendents of schools for their services, be considered as fees, as to regard as a fee the per diem compensation allowed by the statute to members of the county board of review. In the cases of *Board, etc.,* v. *Johnson,* 64 Ill. 149, and *Board, etc.,* v. *Christianer,* 68 Ill.

455, the court held that a per diem allowance by statute to compensate county superintendents of schools could not be regarded as fees, within the meaning of that word as used in the constitution of that state in respect to public officers. See *Board, etc.,* v. *Reissner,* 58 Ind. 260.

In §21, by which, as previously stated, the legislation in regard to the compensation of county officers is introduced, it will be observed that the term "compensation" is employed three times. It is obvious that the legislature in the first two instances, in using the expression, meant and intended to refer to the annual salaries of the officers in each of the respective counties of the State, for by the express language of the section the compensation meant is disclosed to be that which "is graded in proportion to the population and the necessary services required in each of said several counties." No compensation under the act, other than the annual salary of the officer, is attempted to be graded according to the particular standard declared in the section. That it is the annual salary which is intended by the term in question is further manifested by the fact that immediately thereafter follows a list of all of the counties of the State in which the annual salary of each respective officer mentioned is specified or fixed. For example: "In the county of DeKalb the annual salary   *   *   *   of the auditor $2,500." When the clause therein which declares "and they shall receive no other compensation whatever" is construed along with other provisions, especially §136, it becomes evident that the officers are to receive no other compensation by the way of fees or salary in addition to the annual salary fixed by the act, "except as otherwise specified," as is declared by §136. To accord to the clause in question, standing alone, its literal meaning, and construe it as denying, in effect, the right of the officer, outside of his annual salary,—to be allowed for his own use no other compensation upon any event or under any or all circumstances,

—would result in rendering the provision incompatible and inconsistent with other provisions of the act. To illustrate: Under §122 a sheriff is allowed to retain all fees which he collects for serving processes from counties other than his own, and by the same section he is allowed for boarding each person lawfully in his custody a per diem compensation of forty cents for such services. Certainly §21 could not be construed so as to deny the sheriff the right to the per diem allowed and received by him for his services in boarding or furnishing food to persons lawfully committed to his custody either upon criminal or civil process. This compensation surely was intended to belong to him, and he could not be required, under the provisions of the salary law, to pay it over to the county treasurer. Other illustrations, under the act in question, might be given, but the above will suffice to sustain what we assert.

We may again repeat that it is evident from an examination of §136, and other parts of the act, that what the legislature intended most emphatically to deny was the right of the county officer to receive, in addition to his salary, the fees required under the law to be taxed and charged and paid into the county treasury. The annual salary of the auditor is not made to depend upon the amount of fees collected and paid into the treasury by that official. §6532 Burns 1901. Hence, under the circumstances, there is no force in the contention that the legislature intended that the per diem allowance for serving on the board of review should be regarded as a fee to be paid over, when received, to the county, in order to aid in making up the auditor's annual salary, for the latter is required to be paid in full out of any money in the county treasury not otherwise appropriated. The statute, under its terms, does not pretend or profess to award to the members of the board of review the per diem therein provided for any particular act or items of service performed, but it is to compensate them

for all acts and duties performed or discharged each day as an entirety, while acting as a member of said board.

We conclude that appellant is entitled to the money involved in this action, and therefore the court erred in overruling the demurrer to the first paragraph of the complaint, and in finding in favor of appellee upon the facts.

The judgment is reversed, and the cause remanded to the lower court.

All concur, except Monks and Dowling, JJ., who dissent.


## ON PETITION FOR REHEARING.


JORDAN, J.—Counsel in addition to those who represented appellee at the former hearing have intervened, and, in behalf of appellee petitioned for a rehearing. They contend that according to the grammatical construction the per diem awarded by the amendatory act of 1895 (Acts 1895, p. 74) to the members of the county board of review must be limited to the two freeholders appointed by the judge of the circuit court. The argument is advanced that the relative clause "who shall each be paid," etc., refers and applies solely to the two freeholders, and consequently they alone, to the exclusion of the other members of the board, are entitled to receive for their services the compensation prescribed by the statute. This contention can not prevail, unless resort be had to a strained construction of the law. In support of the grammatical interpretation or construction for which counsel contend we are referred to Fowler's English Grammar, 570, where the author says: "Where there are two words in a clause each capable of being an antecedent, the relative refers to the latter." This grammatical rule as above asserted is not an unvarying one under all circumstances and the application thereof is frequently controlled by punctuation disclosing a different intent. In 23 Am. & Eng. Ency. Law, 369, it is said: "In

accordance with strict grammatical construction, qualifying words and phrases should be confined to their next antecedent, in the absence of punctuation showing a different intent. This rule is frequently of no effect, and, indeed, is so often disregarded that the contrary might seem to be established; but, whatever be the rule, it is subservient to the real purpose of the statute, and qualifying words and phrases may be extended to all parts of the sentence, and even to words in other sections, to effectuate the legislative intention, which is the true end of all rules of construction."

In the appeal of *Fisher* v. *Connard,* 100 Pa. St. 63, the words of the statute there involved were: "Taxes, charges, assessments, and municipal claims, whose lien," etc. The relative was separated from the series of nouns preceding it by a comma. The contention in that case was that the relative, "whose lien," applied and referred alone to the last antecedent, "municipal claims." This contention the court denied, saying: "Our best judgment is that 'taxes, charges, assessments and municipal claims' in the act of 1867, were all intended as antecedents of the word 'lien,' and if this makes good law, the grammatical construction is not so important."

While it may be said that the grammatical construction of a statute is one of the methods of interpretation, still it is not always the true mode, and must yield to the manifest intention of the legislature, as the grammatical sense and structure of the sentences, and propriety of language therein employed, will not be adhered to if inconsistent with the declared purpose, or if to do so would render the law inconsistent or absurd. *State* v. *Myers,* 146 Ind. 36, 23 Am. & Eng. Ency. Law, 368.

It appears that the statute in question declares that "Such board shall be composed of the county assessor, county auditor and county treasurer, and two freeholders to be appointed by the judge of the circuit court, who shall each be paid," etc. It will be observed that the relative pronoun

"who" is preceded by a comma. While, as a general rule, the authorities assert that it may be assumed that the draftsman or framer of a bill for an act of the legislature was versed in the rules of grammar and punctuation, still such presumption is not always a safe one for the guidance of a court in the interpretation of a statute. But in the solution of the question in the case at bar we may apply this rule, and assume that had the draftsman or framer of the act herein involved intended that the relative pronoun "who" was to be understood in the restrictive sense for which counsel contend, the word would not have been preceded by a comma. An inspection of the act as it appears on file in the office of the Secretary of State, as it came from the hands of the legislative and executive departments, discloses that the punctuation of the provisions thereof in controversy correspond with and is identically the same as the punctuation in the statute as printed in the official acts of 1895, on page 75.

The grammatical rule that when a relative pronoun follows its antecedent, and is used in a restrictive sense, the comma should not precede it, is well settled. *Vide* Brown's Grammar of English Grammars, 229; Complete English Grammar (Ind. Series), 194; Lockwood's Lessons in English, 225. In Hill's Elements of Rhetoric and Composition, page 107, it is said: "A relative pronoun with several antecedents should be preceded by a comma." In Lockwood's Lessons in English, the author says: "If the relative pronoun refers to each of a series of nouns it should be separated from the series by a comma." Reading the provision in controversy in the light of these well established principles, and it is manifest that the word "who" was not intended by the draftsman of the act, nor by the legislature in the enactment thereof, to be limited or restricted alone to the noun "freeholders," as its antecedent, but was intended to refer to each of the series of nouns preceding it, namely, county assessor, county auditor, county

treasurer, and two freeholders. The relative pronoun "who," as employed in the act in question, may be said to perform dual functions, serving as a pronoun, and also as a conjunction; being equivalent to the words "and they," etc. The language used is, "who shall each be paid," etc., thereby emphasizing the fact that the per diem prescribed was awarded to each and every one of the members composing the board of review. The word "each" as therein used is a distributive adjective pronoun, and denotes or refers to every one of two or more comprising the whole of the series mentioned. See 10 Am. & Eng. Ency, Law (2d ed.), 392; Anderson's Law Dict.; *Adams Express Co.* v. *City of Lexington,* 83 Ky. 657-660; Fowler's English Grammar, 298, 543; Century Dict.

Had the legislature intended to limit to the two freeholders the compensation provided, it would, no doubt, have found apt and appropriate language to disclose its intention in that respect, as was done in the act of 1881, wherein it was declared that the county board of equalization should be composed of the board of commissioners and four freeholders, to be appointed by the judge of the circuit court. The positive language used in that act to limit or confine to the freeholders the per diem prescribed was: "And the said freeholders shall receive as a compensation for their services the sum of $2.50 each per day," etc. At the time of the last-mentioned statute the members of the board of commissioners, under a then existing law, were members of the county board of equalization, and their compensation for serving thereon was fixed at $3.50 per day. §5823 R. S. 1881. The fact that the compensation of the board of commissioners for serving on the board of equalization had already been fixed and prescribed at $3.50 per day by the fee and salary act then in force, fully accounts for and explains the reason of the legislature in limiting to the freeholders the compensation of $2.50 per day, as prescribed in the said act of 1881.

We do not wish to be understood as intimating that the punctuation of the act in question is a controlling feature in its interpretation, or that the question involved, as to whether appellant was entitled to the per diem, is one which may be said, under the law, to be evenly balanced, for when the word "each", used in connection with the relative "who", is considered, and accorded its proper meaning, it becomes perfectly plain that the per diem in question is by the law awarded to each and every member of the board of review. In passing, we may note that Mr. Bishop in his work on Written Laws, at §78, says that punctuation, in the interpretation of statutes, is not of controlling effect, but seems, the author says, "to have been permitted to turn the scale in an evenly balanced case."

In closing their argument upon the petition, counsel admit that if the statute in question, when properly construed, can not be said to award the per diem not only to the freeholders, but also to the auditor, treasurer, and assessor, "then they are entitled to receive it; otherwise not." This may be said to be virtually a concession on the part of counsel and there is no merit in the proposition advanced and urged for consideration by appellee at the previous hearing, to the effect that if the provisions of §114 of the tax law of 1891 (Acts 1891, p. 199), as amended by the act of 1895 (Acts 1895, p. 74), entitled appellant to receive the per diem therein provided, then by virtue of §116 of the salary act of 1895, a later statute, he was required to return it to the county treasury. The insistence being that §114 was so modified and changed by virtue of §116 of the fee and salary law of 1895 that appellant was not entitled to receive and hold the per diem as his own.

In conclusion we may mention the fact that since the original opinion in this appeal was handed down on January 9th of the present year, placing the construction which we did on the provisions of §114 of the tax law in controversy, the legislature, by an act approved February

25, 1903 (Acts 1903, p. 51), passed a law whereby §114 of the tax statute of 1891 was again amended; and the provisions of the act as amended in 1895 in regard to the persons constituting the county board of review, and the per diem of the members thereof, were reënacted *verbatim et literatim.* We therefore must regard this act of the legislature, in the absence of any showing therein to the contrary, as fully adopting and giving sanction to the construction or interpretation placed by the court upon the provisions of the act in controversy. *Indianapolis, etc., R. Co.* v. *Guard,* 24 Ind. 222, 87 Am. Dec. 327; *Hilliker* v. *Citizens St. R. Co.,* 152 Ind. 86; *Board, etc.,* v. *Conner,* 155 Ind. 484.

The construction of the statute having at least impliedly received the sanction and approbation of the legislative department, we, for this reason in addition to others, are satisfied with the result reached at the former hearing. The petition is therefore overruled.

## DISSENTING OPINION.

DOWLING, J.—I find myself unable to agree with the majority of the court in this case, and, in view of the importance of the issue presented, I will briefly state the reasons for my dissent from the prevailing opinion.

Two questions arise upon the record: (1) Did the act of March 1, 1895, (Acts 1895, p. 74) entitle the county auditor to special compensation for his services as a member of the board of review; and (2) if so, did the act of March 11, 1895 (Acts 1895, p. 319) deprive him of it, and require him to pay it into the county treasury? After a careful examination of the subject, I have reached the conclusion that the auditor was not entitled to a per diem allowance for his services as a member of the board of review, and that, even if he had been, his right to receive it was taken away by the later statute. Stated more briefly,

and in its practical form, the question for decision is this: Was the auditor of DeKalb county, in addition to the salary of $2,500 given him by §38 of the act of March 11, 1895, *supra*, entitled to an allowance of $3 per day for his services as a member of the said board? The proper determination of the cause calls for a construction of §114 of the act of March 1, 1895, and a ruling upon the effect of the passage by the legislature of the act of March 11, 1895.

Whatever may be the rule in other states, or in other jurisdictions, this court is committed to the principle of the strict construction of statutes regulating the fees, salaries, and compensation of public officers. To entitle the officer to any fee, salary, or compensation, he must be able to put his finger upon the statute allowing it to him. Doubts are to be resolved in favor of the public and against the officer. Constructive services and constructive fees are unknown to the law of this State, and double compensation for official services is not to be tolerated.

It was said by Mitchell, J., in *Board, etc., v. Gresham,* 101 Ind. 53: "There can be no such thing in legal contemplation as an implied assumpsit on the part of a county with respect to the services of county officers. In performing services for the county, the officer and the county stand related to each other precisely as an individual and the officer, the statute regulating fees being the measure of compensation for the one, and the extent of the liability of the other in each case. For services imposed by law upon the officer, which are not specially rendered for the municipality, as a prerequisite to the liability of the county for said service, the officer must show: (1) A statute fixing the compensation for the service. (2) A law authorizing or making the county liable to pay for such services out of its treasury. It is of the highest concern to the public that this should be so; otherwise it would be within the power of one body of county officials to compensate the other county officers out of the public treasury, as a matter of grace and favor,

without limit or restraint. This principle has been recognized in this State from the beginning, and accordingly it has invariably been held that official duties imposed upon a public officer, to which no compensation is attached, must be performed, as all official duties anciently were, gratuitously."

In *Noble* v. *Board, etc.,* 101 Ind. 127, this court again declared that "It was decided as early as *Rawley* v. *Board, etc.,* 2 Blackf. 355, and it has been the law ever since, that a county can not be liable for the fees and charges of officers without an express statute on the subject."

Again, in *Board, etc.,* v. *Johnson,* 127 Ind. 238, this court said: "It is well settled that a county auditor can recover only such compensation as the statute allows him, and that he is not entitled to recover compensation for duties performed by him, except where the statute so provides, although the services may be regarded by him and by the board of commissioners as 'extra services' entitling him to 'extra' compensation. We have so often discussed this general question that we decline to again discuss it. * * * For many years the General Assembly has clearly and unequivocally declared its policy to be that no constructive fees shall be allowed upon any pretext to county officers, and this court has uniformly given full effect to that policy."

In determining the question presented by the record in this case, the decisions of the courts of other states are entitled to no weight, unless made under statutes similar to our own. *McFarlan* v. *State,* 149 Ind. 149.

In this State, no person can hold more than one lucrative office at the same time, except as the Constitution expressly permits. Const., Art. 2, §9.

Guided by these rules, it would not seem to be a difficult task to decide the question whether the appellant, as auditor of DeKalb county, was entitled to $3 per day while acting as a member of the board of review, in addition to the salary of $2,500 per year allowed him as such auditor.

1.   Such extra allowance is not given to him by the words of the statute.   Section 114 of the act of March 1, 1895, on which appellant's claim to the extra compensation is based, reads as follows:   "There shall be an annual board for the review of all assessments and the equalization of the valuation of real and personal property in each county.   Such board shall be composed of the county assessor, county auditor and county treasurer, and two freeholders to be appointed by the judge of the circuit court, who shall each be paid out of the county treasury, the sum of $3 for each and every day while they are acting as members of said board."   The assessor, auditor, and treasurer were already salaried officers of the county, whose duties, within proper constitutional limits, the legislature at all times had the power to prescribe, increase, or diminish in its discretion.   There was no occasion to provide further compensation for them.   But the two freeholders who were to be appointed members of the board could receive nothing for their services unless compensation was given to them by statute, and they were evidently the members of the board who were "each to be paid the sum of $3 for each and every day while they are acting as members of said board."   Not only is this the reasonable and natural construction of the language of the statute, but it is in harmony with the grammatical arrangement of its words.   It will be observed that the section reads:   "Such board shall be composed of the county assessor, county auditor and county treasurer, *and* two freeholders to be appointed by the judge of the circuit court, who shall each be paid out of the county treasury, the sum of $3 for each and every day," etc.   The interposition of the conjunction "and" between the words "county auditor" and "county treasurer" indicated that as to those officers the sentence was complete.   The statute designated them as members of the board and nothing more.   The subject of the succeeding clause, introduced by a second conjunction "and", is two freeholders to be appointed by the

judge of the circuit court, and in the concluding part of the sentence, "who shall each be paid out of the county treasury, the sum of $3 for each and every day while they are acting as members of said board," the relative pronoun "who" refers exclusively to the two freeholders, and not to the three salaried county officers named in the first clause. If the legislature had intended that the special compensation of $3 per day should be paid to the three county officers, it would have said: Such board shall be composed of the county assessor, county auditor, county treasurer, and two freeholders, to be appointed by the judge of the circuit court, who shall each be paid out of the county treasury the sum of $3 for each and every day while they are acting as members of said board.

Resorting to previous acts of the legislature, as we have the right to do for the purpose of ascertaining the meaning of the present statute, we find that the revised statutes of 1881 made the board of commissioners of each county and four freeholders the county board of equalization. The duties of this board were similar to those now performed by the board of review. The law provided that the freeholders on the board should receive the sum of $2.50 per day for their services while actually employed; but no compensation was given to the members of the board of commissioners beyond the allowance made to them by law as such commissioners.  §6397 R. S. 1881.

Again, while the board of review, as created by the act of March 6, 1891, was composed of the county assessor, county auditor, and county treasurer, alone, and its duties were precisely those prescribed for the board of review by the act of March 1, 1895, no compensation whatever beyond their salaries was given to the three officers constituting the board. Not until "two freeholders" were added to the board by the act of March 1, 1895, was any special compensation for any of the members of the board mentioned. As these freeholders were not public officers under salary, they

could not be expected to serve without compensation. The assessor, auditor, and treasurer, each received a salary. Therefore no necessity existed for making to them a further allowance. When the act of March 1, 1895, was passed, they were performing all the duties of members of the board of review, under the act of 1891, without extra pay. Why should an addition to their compensation be made when their labors were divided and lightened by two freeholders who were placed on the board to assist them?

The legislature had the right to impose upon the assessor, auditor, and treasurer new and additional duties, and to require these officers to perform them without compensation other than the salaries already allowed. *Gilbert* v. *Board, etc.,* 8 Blackf. 81; *Board, etc.,* v. *Blake,* 21 Ind. 32; *Board, etc.,* v. *Johnson,* 31 Ind. 463; *Turpen* v. *Board, etc.,* 7 Ind. 172; *Noble* v. *Board, etc.,* 101 Ind. 127; *Sudbury* v. *Board, etc.,* 157 Ind. 446.

County officers are in many cases required by statute to perform services unconnected with their usual official duties. The technical designation of the county clerk is "the clerk of the circuit court." Const., Art. 6, §2. But in certain contingencies he must call special sessions of the board of commissioners. §7822 Burns 1901. He acts as clerk of the board of canvassers of elections. §6271, *supra.* The clerk, auditor, and recorder are made the trustees for the county library. §4965, *supra.* The clerk, sheriff, and auditor may, under some circumstances, appoint a special judge of the circuit court. §§1444, 1447, *supra.* The county auditor may participate in the election by the township trustees of the county superintendent, and give the casting vote in case of a tie. §5900, *supra.* The auditor must act as the clerk of the board of commissioners. §7825, *supra.* Yet in none of these cases is special compensation made to any of these officers, and in all of them the officer acts in his official character as clerk of the circuit court, sheriff, recorder, or as county auditor. The duty is made an in-

cident of the office. The assessor, auditor, and treasurer were by the act of March 1, 1895, made members of the board of review *ex officio,* and the services to be performed by them were properly added to their existing official duties.

Referring once more to the words of the act of March 1, 1895, creating the board of review, it will be observed that the assessor, auditor, and treasurer are not appointed or elected members of that body by the executive, by the legislature, by the judge of the circuit court, or other public officer, or by the electors of the county. Section 114 provides that the two freeholders shall be appointed by the judge of the circuit court. The three county officers are brought into the board and subjected to the provisions of the act by the words: "Such board shall be composed of the county assessor, county auditor and county treasurer, and two freeholders to be appointed by the judge of the circuit court," etc. None of the duties prescribed by §114 of the act of 1895 was inconsistent with, or essentially different from, the duties required by existing statutes to be performed by the three county officers who were made *ex officio* members of the board of review. Each of them was directly connected with the general revenue system of the county and State. By virtue of his office, each possessed special facilities for the discharge of those public duties which were committed to the board of review. They were the only persons having official knowledge of the subjects to be considered by such board. Had that board been composed of persons other than the assessor, auditor, and treasurer, it could have done nothing without the attendance of these public officers, and the exhibition and explanation by them of the books, papers, and records of their offices. Such attendance could certainly have been exacted as a part of the duty of these officers under the acts in force in 1891 and 1895.

2. If the act of March 1, 1895, gave to the auditor the special compensation of $3 per day while acting as a member of the board of review, that compensation was taken

away by the act of March 11, 1895. At the same session of the General Assembly which passed the act of March 1, 1895, creating the board of review, and ten days later, another act was passed entitled, "An act fixing the compensation, and prescribing the duties of certain state and county officers, fixing certain fees to be taxed in the offices and the salaries of officers therein named," etc. Acts 1895, p. 319. Section 116 of this act was in these words: "Where the auditor is required by law to perform any service not specially mentioned in this act, for which services the auditor shall be entitled under the law existing before the taking effect of this act, to tax, charge or receive any fee or compensation in his own favor for such service, he shall hereafter tax the amount on account of such service in favor of the county, and the same shall be collected and paid into the county treasury, as elsewhere provided in this act." The terms of this section are sweeping and admit of no exception. Not only does it require all "fees" for services performed by the auditor to be taxed in favor of the county and paid into its treasury, but it emphatically declares that any compensation for "any service not specially mentioned in this act" which "the auditor shall be entitled under the law existing before the taking effect of this act, to * * * receive * * * in his own favor for such service, he shall hereafter tax the amount on account of such service in favor of the county," etc.

Even if the construction I have placed upon §114 of the act of March 1, 1895, is erroneous, and if the auditor, under the act of March 1, 1895, was entitled to receive as compensation for services as a member of the board of review the sum of $3 per day while acting as such member, then the case falls precisely within the terms of §116 of the fee and salary law of March 11, 1895. By the act of March 1, 1895, amending the act creating the board of review, the county auditor was required to perform services not specially mentioned in the fee and salary act of March

11, 1895. That special service was to act as a member of the board of review not more than thirty days in any year. If it be true that as such member the auditor was entitled, under the existing law of March 1, 1895, to the compensation of $3 per day for that service, then by the express terms of the act of March 11, 1895, that compensation belonged not to him, but to the county. The two acts were passed at the same session of the General Assembly. If the first gives special compensation to the auditor, the second denies it. There is, then, an irreconcilable conflict between them, and the later act must prevail. *Shea* v. *City of Muncie,* 148 Ind. 14.

Section 21 of the act of March 11, 1895, declares that the county officers named therein,—and the county auditor is one of them,—"shall be entitled to receive for their services the compensation specified in this act   *   *   *   and they shall receive no other compensation whatever. Section 38 of the act provides that the auditor of DeKalb county shall have an annual salary of $2,500. Section 138 repeals all laws and parts of laws in conflict with the act of March 11, 1895, to the extent of such conflict. The act of March 1, 1895, if it gave to the auditor any compensation for special services not mentioned in the fee and salary act, and thereby conflicted with the later act, was, to that extent, repealed.

The act of March 11, 1895, applies not only to the services, fees, salary, and compensation mentioned in it, but it is expressly extended to "any services not specially mentioned in this act, for which services the auditor shall be entitled under the law existing before the taking effect of this act, to tax, charge or receive any fee or compensation." Language could not be plainer. The evident intention of the legislature was to make the salary of $2,500, allowed the auditor of DeKalb county, the only compensation to which he should be entitled for any and every kind of official service performed by him. This interpretation of these

statutes is in harmony with the established policy of the State, which seeks to keep exactions for official services within reasonable bounds, by cutting off extra and specific allowances, and granting to the auditor and other officers salaries carefully adjusted according to the constitutional requirement.

No detriment to the public interests could result from the performance of the additional duties imposed upon the county auditor as a member of the board of review, for the reason that, if that service required his absence from his office, all his other duties as auditor could be discharged by a deputy.

If an attempt is made to justify the allowance of the per diem to the auditor on the ground that membership of the board of review constitutes a separate office, then it may be suggested that the provisions of the Constitution forbid the auditor from holding two lucrative offices at the same time. Const., Art. 2, §9; *State, ex rel.,* v. *Kirk,* 44 Ind. 401, 15 Am. Rep. 239; *Chambers* v. *State, ex rel.,* 127 Ind. 365, 11 L. R. A. 613.

Without pursuing this subject further, I think it clearly appears that the appellant was not entitled to the $3 per diem claimed by him, and that the judgment of the DeKalb circuit court should be affirmed.

Monks, J., concurs in dissenting opinion.