GATES v. HICKMAN, CITY CONTROLLER, ET AL.

[No. 17,502. Filed January 10, 1947. Rehearing Denied March 31, 1947. Transfer Denied May 15, 1947.]

*Edward H. Knight,* of Indianapolis, for appellant.

*Arch N. Bobbitt,* Corporation Counsel, *Henry B. Krug,* City Attorney, *Glenn W. Funk,* Assistant City Attorney, and *Sidney S. Miller,* all of Indianapolis, for appellees.

CRUMPACKER, C. J.—The appellant is a resident tax-payer of the city of Indianapolis, Indiana, and, as the plaintiff below, brought this action in his own behalf and in behalf of all others similarly situated. His complaint, as supplemented by an additional pleading, alleges that the appellee Arthur B. Henry was the city engineer of the city of Indianapolis from March 17, 1943, to October 10, 1945, during which time said city paid him the regular salary of such engineer and in addition thereto the sum of $14,194.19, figured on the basis of $5,000 per year, for services in connection with railroad grade

separations and track elevations undertaken by said city during his term of office as aforesaid. That the payment of said additional sum of $14,194.19 to said Henry was wholly illegal and unauthorized by law and he asks that said money be recovered for the use and benefit of the city of Indianapolis and its taxpayers and that the appellees Roy E. Hickman and Frank P. Huse, as Controller and Treasurer respectively of said city, be enjoined from making any future payments to the appellee Jacobi, as Henry's successor in office, over and above his regular salary, for work in connection with railroad grade separation projects in the city of Indianapolis.

A demurrer for want of facts to this complaint, as supplemented, was sustained and the case is brought here for a review of such ruling.

The ultimate question presented may be stated as follows: Is the city engineer of the city of Indianapolis, which is a city of more than 300,000 population, entitled to the salary provided by § 4 of ch. 152, Acts of 1923, as amended by ch. 25, Acts of 1933, in addition to the salary provided for such city engineer by § 11 of ch. 233, Acts of 1933?

Chapter 152, Acts of 1923, as amended by ch. 25, Acts of 1933, being § 48-3401, *et seq.*, Burns' 1933, is entitled as follows:

"AN ACT to provide for the alteration of steam railroad grade crossings and to secure the depression or elevation of steam railroad tracks where the same cross streets or other highways in cities of more than one hundred thousand population according to the last preceding United States census, and authorizing the opening, change and vacation of streets and other highways and change of grades thereof in connection therewith; providing for the payment of the cost of such improvement by railroad companies, street railway companies, and the city and county in which such city is located, and incorporated towns lying within (or) surrounded

by the corporate limits of such city, and repealing all laws in conflict therewith."

The 1933 Amendment limited the applicability of this act to cities of more than 300,000 population rather than to those of more than 100,000, as provided by the act before amended. It contained an emergency clause, was approved by the governor February 18, 1933, and became effective on that date.

Chapter 233, Acts of 1933, being § 48-1201, *et seq.*, Burns' 1933, is commonly known as the Cities and Towns Act of 1933, and is entitled as follows:

> "AN ACT concerning the classification and government of civil cities, reducing certain civil cities to civil towns and providing for the government of such towns, fixing and providing for the salaries of officers and employees, repealing all laws and parts of laws in conflict herewith, providing for the date of taking effect of certain provisions and declaring an emergency."

This act was approved by the governor on March 9, 1933, and, as it declared an emergency, it became effective on that date.

Section 4 of ch. 152, Acts of 1923, as amended by § 1, ch. 25, Acts of 1933, being § 48-3404, Burns' 1933, reads in part as follows:

> " . . . The board may employ such engineers, draftsmen, inspectors and clerks as may be necessary to prepare surveys and plans and properly supervise any such work, at such salaries as may from time to time be fixed by it, which salaries shall not exceed those paid by said city for similar services. *It shall likewise require the services of the city civil engineer, who shall be paid for his services in connection with said work, in addition to his regular salary, the sum of five thousand dollars ($5,000.00) per annum for his services.* . . ." (Our emphasis.)

Section 11 of ch. 233, Acts of 1933, being § 48-1223, Burns' 1933, fixes the maximum salary of all officers of cities of over 250,000 population and, concerning the city engineer, reads as follows:

" . . . city engineer, four thousand five hundred dollars ($4,500) ; provided, The salary established within the maximum herein named for the city engineer shall be in full for all services of whatsoever kind or nature, including his services as member of the board of sanitary Commissioners and he shall receive no other fees, per diem or emoluments whatsoever; . . ."

By proper ordinance, duly enacted on March 16, 1942, the salary of all officers of the city of Indianapolis, including the city engineer, were fixed at the maximum provided by statute and remained so fixed during all of the time here involved.

The appellant contends that ch. 152, Acts of 1923, as amended by ch. 25, Acts of 1933, which for convenience sake we will hereafter call the prior act, and ch. 233, Acts of 1933, which hereafter is referred to as the later act, are both general laws. That § 4 of the prior act and § 11 of the later act both deal, in part and in effect, with the salary of the city engineer of the city of Indianapolis. That the salary provision of § 11 of the later act, so far as it pertains to such city engineer, is in irreconcilable conflict with the salary provisions of the prior act and therefore the later act controls and, by implication, repeals the salary provisions of the prior act. *City of East Chicago* v. *Seuberli* (1941), 108 Ind. App. 581, 31 N. E. (2d) 71; *State ex rel. O'Donnell* v. *Flickinger* (1937), 211 Ind. 361, 7 N. E. (2d) 192; *Wright* v. *The Board of Commissioners of the County of Tipton* (1882), 82 Ind. 335.

We readily agree with the appellant that both acts involved in this controversy are general laws. The

prior act applies to all cities having a population of over 300,000 and § 10 thereof expressly declares that it is supplemental to the general Cities and Towns Act of 1905. The later act reclassifies all cities of the state, fixes a new scale of maximum annual salaries of certain specified municipal officers and confers new and additional powers on the mayor. It must necessarily be read in connection with and in supplement of the Cities and Towns Act of 1905, the general character of which is not open to debate.

Both acts under consideration were passed at the same session of the legislature and we are bound to make every effort to construe them together and in such manner as to avoid a repeal by implication of the first act or any part thereof by the later act, as repeals by implication are not favored in law. *City of Rushville* v. *Thomas* (1929), 88 Ind. App. 665, 165 N. E. 341; *The Board of Commissioners of Tippecanoe County* v. *Mitchell* (1892), 131 Ind. 370, 30 N. E. 409; *Seiler* v. *State ex rel.* (1903), 160 Ind. 605, 65 N. E. 922, 66 N. E. 946, 67 N. E. 448.

So far as they pertain to the pay of city engineers in cities of over 300,000 population, these two acts seem to be in such irreconcilable conflict as to prevent their being read together and full force and effect given to both. The prior act allows such engineer $5,000 per year, in addition to his regular salary, as compensation for certain work therein described. The later act provides that his regular salary shall be in full for all his services of every kind and nature and he shall receive no other fees, *per diem,* or emoluments whatever. Under what theory of statutory construction can these two acts be reconciled so as to give full force and effect to each?

The appellees solve the problem by insisting that the

later act, limiting the compensation of a city engineer to $4,500 per year, refers only to his compensation for services rendered in the performance of the "regular, ordinary and customary" duties pertaining to the office and has no concern with extra compensation provided by acts imposing extraordinary duties upon him. But what are the "regular, ordinary and customary duties" of a city engineer? We have no statute that defines them. Section 48-1241, Burns' 1933, provides that the city engineer "shall be subject to the direction of the board of public works, . . . and such engineer shall keep accurate records of grades and lines of sewers and such other matters as may be required by the duties of his office." His duties are prescribed by many sections of the Cities and Towns Act of 1905 and numerous acts supplementary thereto and countless directives of the board of public works in connection with matters under its jurisdiction. Section 48-1902, Burns' 1933, sets out 25 general powers and duties of the board of public works in connection with each one of which the services of the city engineer may be required. The exercise and performance of some of these powers and duties by the board of public works may require the services of the engineer frequently and others very rarely. In one city of 300,000 population track elevation projects may be undertaken so frequently as to type the services of the engineer in connection therewith as "regular, ordinary and customary" while in another city of the same size such projects may be undertaken but once in years. If the question is determined by the facts in each particular case we may find ourselves in the anomolous situation of sanctioning extra pay for the engineer in connection with track elevations in one city while denying it to him in another, thus destroying the general application of the law.

We are forced to conclude that the law recognizes no arbitrary classification of the duties of a city engineer into those that are "regular, ordinary and customary" and those that are extraordinary and unusual, and, as a basis for saving the prior act here under consideration, such classification must fall.

We recognize, of course, that the legislature may confer and in the past has conferred, from time to time, new and additional powers upon municipalities and the exercise of such powers has imposed additional duties upon the engineer for which the legislature has provided extra compensation. The track elevation act, here under consideration, is a typical illustration of such legislation. However, the legislature may by later enactment withdraw such extra compensation and leave the duties obligatory. *Board, etc.* v. *Chapman* (1899), 22 Ind. App. 60, 53 N. E. 187; *Watts* v. *City of Princeton* (1911), 49 Ind. App. 35, 96 N. E. 658; *The Board of Commissioners of Carroll County* v. *Gresham* (1885), 101 Ind. 53. It seems clear that it is these "extra pay" statutes that the legislature had in mind and the extra pay feature of which it sought to eliminate when it enacted the proviso in § 11 of the later act. In arriving at this conclusion we have considered the whole act in the light of the conditions existing at the time of its enactment and the purposes it sought to accomplish. By reason of the great depression that affected the country in the early thirties and the general spirit of economy it engendered, the legislature passed an act in 1932 whereby most public salaries in the state were temporarily reduced by a specific formula, effective during the year 1933, ch. 70, Acts 1932. As this act was temporary in its application the legislature of 1933 concluded to provide a new scale of maximum salaries for municipal officers and this pro-

gram became a part of ch. 233 of the Acts of 1933. It is significant that this new scale reduced the maximum salaries of all officers of cities of the first class except that of the city engineer, which was increased from $3,500 to $4,500. This increase, we think, was prompted by the fact that the legislature intended that the proviso in § 11 should withdraw all compensation such engineer would otherwise be entitled to receive under the various so-called "extra pay" statutes then in force. The appellees contend, however, that even if such was the intention of the legislature they excluded the extra compensation due the engineer under the track elevation act by using the words "including his services as a member of the board of sanitary commissioners" in the proviso under discussion. This contention is based on the maxim *"expressio unis est exclusio alterius."* It is the universal rule, however, that this maxim cannot be used to defeat the clearly expressed intention of the legislature. *Cresy* v. *Pyramid Coal Corp.* (1945), 116 Ind. App. 124, 61 N. E. (2d) 477, and cases cited. As we have stated we think it clear that the very purpose of the proviso is to limit the compensation of the engineer "for all services of whatsoever kind or nature" to his regular salary which was increased to cover, in part at least, his loss of extra pay.

It is next urged that when two seemingly inconsistent acts are passed at the same session of the legislature the one dealing with the *common subject* in a more minute way will prevail over the one of a more general character. There is ample authority for this rule but we fail to see its application here. The *common subject* dealt with by the two acts under consideration is compensation for the city engineer. The prior act says he shall have $5,000 per year for his

services in connection with track elevations and the later act says that he shall be paid a salary of not to exceed $4,500 in full for his services of "whatsoever kind or nature." The prior act provides that the engineer's compensation shall be part of the costs of the project. The later act provides that the common council shall ultimately fix his salary within prescribed limits. The prior act goes into considerable detail as to how the fund for the payment of the costs of track elevations, of which the engineer's compensation is an insignificant part, shall be raised but this fund, or the manner in which it is provided, is in no sense the *common subject* of the two acts. We see no difference in the minuteness or detail with which the two acts deal with the pay of the city. engineer, which is the only subject they have in common.

While the appellees concede that both acts here involved are general laws they insist that the prior act pertains exclusively and specifically to the special subject of track elevations and therefore no part of it is repealed by the later act which deals in general terms with cities and towns. This contention is largely based on the decision of this court in *Million* v. *Metropolitan, etc. Co.* (1933), 95 Ind. App. 628, 172 N. E. 569, wherein the State Highway Act of 1919 was loosely designated as a "special" law and it was held that its provisions in reference to contractors' bonds was not repealed by different though somewhat similar provisions of a later act passed in 1925, amending the Act of 1911, for the protection of materialmen generally. The characterization of the State Highway Act of 1919 as a "special law" was clearly erroneous as the Supreme Court, in *Wright* v. *House* (1919), 188 Ind. 247, 121 N. E. 433, had already held that the very simi-

lar State Highway Act of 1917 was a general and not a special act and such decision was no doubt controlling on the question. The Million decision gave effect to both bond acts because the original Act of 1911, as amended by the Act of 1925, "declared that said act should not be construed as repealing any other laws for the protection of . . . materialmen, but as being supplementary thereto." The present case presents no such situation and the Million case has no force as a binding precedent on the question here involved.

The appellees lay considerable stress on the decision in *Seiler* v. *State ex rel.*, *supra*, which, at first blush, seems to lend their position marked support. The court held that the Act of 1895 (Acts of 1895, p. 74) fixing a per diem of $3.00 to county auditors for services on the board of review, was not repealed by the General Fee and Salary Act of 1895, enacted 10 days later (Acts of 1895, p. 319) and providing that all fees collected by the auditor, as his personal property under any former act, should be returned in the future to the treasurer as the property of the county. Upon analysis it appears that both laws were permitted to stand because the court concluded that "per diem" and "fees" are different forms of compensation and therefore the provisions of the two acts are not in conflict.

We can see little distinction in principle between the case before us and that of *Losche* v. *Marion County* (1934), 207 Ind. 44, 191 N. E. 143. Losche was clerk of the Marion Circuit Court and filed a claim against the county for services rendered as a member of the board of election canvassers, as authorized by § 3 of ch. 113, Acts of 1905, the same being § 29-1403, Burns' 1933. In 1921 the legislature passed an act providing that in cities having a population of more than 300,000

"The clerk of the Circuit Court shall receive an annual salary of seven thousand five hundred dollars ($7500) . . . . The salary named herein shall be in full for all services, and no other compensation or fees of any nature shall be paid to any of the above officers . . . ." (Acts of 1921, p. 851). The question was one of implied repeal and in disposing of it the court said: "We are unable to see how the legislature could have selected stronger language in which to express the intention that the salary provided for should be in full for all services, and that no other compensation of any nature should be paid the clerk."

It is true that the section of the prior act, allowing compensation of $5,000 per year to the engineer for his services in connection with track elevation, is the verbatim enactment of § 4, ch. 152 of the Acts of 1923 and that it was passed earlier in the same session of the legislature as was the later act limiting the salary and other compensation of such engineer to $4,500. These may be cogent facts bearing on the question of legislative intention but, giving them due consideration, we are nevertheless constrained to hold that the pertinent provisions of the two acts are irreconcilable and that § 4 of ch. 152, Acts of 1923, as amended by ch. 25, Acts of 1933, has been repealed insofar as it provides additional compensation for the city engineer out of funds supplied by the city.

We do not wish to be understood as holding that § 11 of ch. 233, Acts of 1933, prohibits the city engineer from receiving extra compensation, in connection with track elevation projects, out of funds supplied by private corporations or the county in proportion to their contribution to such funds. That question we do not decide and what we have said here refers only to extra com-

pensation to be paid by the city or any of its political subdivisions.

Judgment reversed with instructions to overrule the demurrer to the complaint.

ROYSE, J., not participating.

NOTE.—Reported in 70 N. E. (2d) 441.