CATHERINE THOMPSON *v.* FIELD THOMPSON.
OBELIA SMITH *v.* CLIFFORD D. SMITH.

[No. 271S41. Filed August 29, 1972.]

*David F. Shadel,* LSO of Indianapolis, for appellants, *Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Assistant Attorney General, attorneys amicus curiae.

*Gary R. Landau, William L. Soards, Bowen, Myers, Northam & Soards,* of Indianapolis, for City of Indianapolis.

DEBRULER, J.—These two appeals raise identical questions about the right of indigent persons to get divorces in the courts of this State on the basis of notice to the defendant by publication, when they are unable to pay the cost of serving summons by publication. There are no issues of fact involved. In each case the appellant sought to commence an action for divorce in the trial court and presented a petition to the trial judge requesting an order of court permitting appellant to prosecute her divorce action as a "poor person" under I.C. 1971, 34-1-1-3, being Burns § 2-211, and also requesting a waiver of filing fees including the cost of publishing summons pursuant to I.C. 1971, 33-1-9-2, being Burns § 49-1305 (b).

In each case the trial court determined that appellant was in fact unable to pay court costs and therefore entitled to proceed with her divorce action in *forma pauperis*, and further determined that the $25.00 advance filing fee be waived, however, in each case the trial court refused to waive a trial court requirement that $21.00 be paid to the clerk upon filing the complaint to secure the cost of effecting service of summons by publication. The trial judges were of the opinion that they had no jurisdiction or authority to waive costs of publication. The result of the refusal to waive pre-payment of the cost of publication was to prevent appellants from commencing their actions and litigating their claims for divorce. From these orders appellants have appealed.

Because of the public importance of the issues raised in these appeals, this Court on its own motion ordered that the City of Indianapolis be made a party appellee to the cases and it has complied by filing a motion to dismiss and brief on the merits. Also in our order, we invited the Indiana Attorney General to file a brief as Amicus Curiae. The Attorney General has responded with a brief on the merits, resisting this appeal.

Appellee and amicus curiae contend in their briefs and in the motions to dismiss the appeals, that the orders of the trial courts determining that appellants were unable to pay court costs but refusing to waive costs of publishing Summonses are not "final judgments" or "interlocutory orders" from which appeals may be taken pursuant to Rule AP (4). They also argue that if appellants have any remedy at all it is by way of an original action in this Court for extraordinary writ and not by way of appeal. In the Smith case before us, appellant filed a timely motion to correct errors directed to the order refusing to waive costs of publishing summons. In the Thompson case, appellant did not file a motion to correct errors, but followed instead the procedure for appeal from an appealable interlocutory order. We hold

that these orders, sought to be reviewed in these cases are final judgments for the purposes of appeal and Rule AP (4), and thus the procedure followed in the Thompson case was technically correct, and the procedure followed in the Smith case was technically incorrect.

As a general rule, a final judgment which is appealable is one which disposes of all of the issues as to all of the parties and puts an end to the particular case. *State ex rel. Neal, et al.* v. *Hamilton Circuit Court* (1966), 248 Ind. 130, 224 N. E. 2d 55; *VonBehren* v. *VonBehren* (1969), 252 Ind. 542, 251 N. E. 2d 35; *Richards* v. *Crown Point Community School Corp.* (1971), 256 Ind. 347, 269 N. E. 2d 5. A final judgment reserves no further question or direction for future determination. *Seaney* v. *Ayres* (1958), 238 Ind. 493, 151 N. E. 2d 295. The purpose of the final judgment rule is to prevent delay in the trial of lawsuits which would result from limitless intermediate appeals. *Lake County Trust Co.* v. *Indiana Port Commission* (1967), 248 Ind. 362, 229 N. E. 2d 457; *Mak-Saw-Ba Club* v. *Coffin* (1907), 169 Ind. 204, 82 N. E. 461. In the cases now pending before us, the entire body of issues presented to the trial courts are contained in appellants' petitions. Those issues are whether appellants should be permitted to commence their suits for divorce as poor persons and whether they were entitled to have the costs of publishing summonses waived. Hearings were held on all of these issues, and judgments were rendered which decided all of these issues. No further trial court action was contemplated in the judgments or governing statutes. After these judgments were rendered there was nothing left pending in the trial courts. These cases were at an end following the entry of these judgments. There judgments were not only final, in the sense that they disposed of all the issues pending before the trial courts, but by their express terms they were final in the real and practical sense that they constituted an absolute obstacle to appellants' commencement of their suits. Viewed

in this practical sense, our determination that these are final and appealable judgments does not offend our general policy against permitting piecemeal appeals of lawsuits.

In light of our determination that these are final appealable judgments, we reject appellee's contention that the appeals from them should be dismissed because appellants chose not to seek a remedy from them by way of an original action for writ of mandate. An original action before this Court for extraordinary writ does not lie where the remedy at law by way of appeal is adequate. Original Action Rule, Indiana Rules of Court, p. 229.

The motion to dismiss in the Smith case is denied. Although the motion to dismiss in the Thompson case is technically correct, it is also denied in light of our remand order to the trial court to resubmit and rehear the petitions thereby making dismissal of the Thompson appeal and treatment on its merits identical in practical result. A dismissal in the Thompson case would merely have the practical effect of requiring the appellant Thompson to refile her petition with the trial court.

Appellant, Catherine Thompson, was married in 1954 and separated in 1965. At the time of filing her motion for waiver of all costs, she was an unemployed dietetic worker, living in public housing with two minor children born of the marriage, and her sole income was $150.00 per month paid to her by the Marion County Department of Public Welfare. She owned no property of appreciable value and did not know the whereabouts of her husband.

Appellant, Obelia Smith, was caring for her six children at the time she filed her petition for waiver of all court costs, was unemployed, owned no property of appreciable value, and her sole income was $225.00 per month from the Marion County Department of Public Welfare. She had not heard from her husband for eight months and had unsuccessfully tried to locate him through his relatives.

It is the claim of appellants on appeal that the trial court

committed error in refusing to order the costs of publication waived. It is their contention that the trial court should have made this order upon determining that appellants were indigent and unable to pay court costs and further that the authority to make such an order is vested in the courts by statute, Burns §§ 2-211 and 49-1305 (b), *supra*, by the due process and equal protection clauses of the Fourteenth Amendment, and by the common law of Indiana.

As part of the insight into this case it is necessary to note that the divorce statute affords the legal right to obtain a divorce. This statute commences with the following familiar language:

> "Divorces may be decreed upon the application of the injured party for the following causes and no other. . . ." I.C. 1971, 31-1-12-3, being Burns § 3-1201.

In addition, the divorce statute grants the right to a divorce upon the basis of notice to the defendant by publication in the following terms:

> "If it shall appear by affidavit of plaintiff that the defendant is not a resident of this state, or the residence of the defendant, upon diligent inquiry, is unknown to plaintiff, which shall be stated in such affidavit, the clerk shall give notice of the pendency of such petition, by publication in a newspaper of general circulation in the county for three (3) successive times, one (1) week apart, as provided by law; and in case such affidavit states the residence of the defendant, the clerk shall forward, by mail, to such defendant the number of the newspaper containing such notice, with the notice marked." I.C. 1971, 31-1-12-7, being Burns § 3-1206.

A divorce by publication is contingent in nature in that the party obtaining such a divorce may not remarry for two years. I.C. 1971, 31-1-12-1, being Burns § 3-1224. These statutory provisions are a clear statement of the decision of our Legislature to afford married persons who otherwise meet the substantive requirements of the

statute the legal right to institute and maintain divorce actions and to obtain divorce decrees based solely upon notice to the defendant by publication. Both appellants as part of their sworn statements to the trial courts requesting the waiver of publication costs, stated that they did not know the whereabouts or residence of their husbands. Both had made repeated attempts through various sources, including contacts with relatives, to locate their husbands without success. Both appellants were seeking the remedy of divorce by publication notice granted by our statute.

We now turn to appellants' first claim that the trial courts here were authorized by Burns § 49-1305 (b), *supra,* to make the order waiving the costs of publishing summonses, requested of them by appellants in these cases. It reads as follows:

"Any person entitled to institute any civil action or proceeding in the circuit, superior or probate courts, may, upon order of the court, commence any such action or proceeding without being required to make the payment provided for by section 1 of this act or pay other court costs, upon filing in any such court a statement under oath in writing, that because of his poverty he is unable to make such payments or to give security for the same and that he believes that he is entitled to the redress he seeks in such action or proceeding, and setting forth briefly the nature of his alleged action or proceeding."

The cost of publishing summons is not specifically mentioned in this statute as a cost which may be waived. The statute authorizes the trial court to exempt a qualified person from the requirement of making the section 1 payment or paying "other court costs." The trial judge is granted flexibility in setting the terms of the exemption. The phrase "other court costs" is very general in meaning and its use renders the boundaries of the exemption authorized by the statute uncertain and undefined. Therefore, in order to decide the issue before us, it is ncessary to construe the statute and in so doing to apply familiar and applicable rules of construction. *Eads, et. al.* v.

*J. & J. Sales Corp.* (1971), 257 Ind. 485, 275 N. E. 2d 802;
*Reomé* v. *Edwards* (1948), 226 Ind. 229, 79 N. E. 2d 389. The
foremost object of construing a statute is to determine
■ and carry out the true intent of the Legislature. *Seiler*
v. *State ex rel. Brd. of Commissioners* (1903), 160 Ind.
605, 65 N. E. 922. Since we are dealing with more than one
section of the same act, the rules requiring an act to be con-
strued as a whole and requiring separate sections of the same
act to be construed together and in harmony with one another
should be applied. I.L.E. *Statutes*, § 122. The *ejusdem generis*
rule has apparent applicability here, since the words "other
court costs" are general in import and they are preceded in
Burns § 49-1305 (b) by several specific and well-defined types
of court costs. Also, the poor persons statute, Burns § 2-211,
*supra*, is a similar statute, covering much the same subject
matter, and as such should be considered in construing the
meaning of the statute before us, so as to determine the spirit
of this type of statute and to give them harmonious meanings,
I.L.E. *Statutes*, § 130.

From the date of its admission to the Union down to this
day, Indiana has been a leader in providing indigent persons
with free access to her courts and in providing them with fair
treatment while in court. This just policy has found ex-
pression in § 49-1305 (b), and in such statutes as § 2-211. That
latter statute is as follows:

"Any poor person not having sufficient means to prosecute
or defend an action may apply to the court in which the
action is intended to be brought, or is pending, for leave
to prosecute or defend, as a poor person. The court, if satis-
fied that such person has not sufficient means to prosecute
or defend the action, shall admit the applicant to prosecute
or defend as a poor person, and shall assign him an attorney
to defend or prosecute the cause, and all other officers
requisite for the prosecution or defense, who shall do their
duty therein without taking any fee or reward therefor
from such poor person."

Similar statutes defining the relationship of indigent persons vis-a-vis the courts have their source in the Indiana Territory Laws 1813, ch. 4 (reprinted in 20 Indiana Historical Collections 303-305, Ewbank and Ricker, 1934), and the territory laws in turn found their origins in strikingly similar statutes enacted by the British Parliament as far back as the year 1495. II Henry VII, ch. 12, 4 Stat at Large, provided:

"(2) That every poor person . . . which . . . may have cause of action . . . against any person . . . within this realm, shall have . . . writs original, and writs of subpoena, according to the nature of their causes, therefor paying nothing to your Highness for the seal of the same, nor to any other person for the writing of the same writ or writs. . . . (5) And likewise the justices shall appoint . . . all other officers requisite and necessary to be had for the speed of the said suits . . . which shall do their duties without any reward. . . ."

Both Burns § 49-1305 (b) and Burns § 2-211, are intended to exempt a class of persons from paying court costs and other necessary expenses of litigation, which they are unable to pay because of their poverty. It is the stated purpose of these statutes and the obvious intent of our Legislature to permit indigent persons free access to our courts and the legal remedies they afford. *Hendryx* v. *State* (1892), 130 Ind. 265, 29 N. E. 113; *Hoey* v. *McCarthy* (1890), 124 Ind. 464, 24 N. E. 1038. In construing Burns § 2-211, this Court stated in *Hoey:*

"It is manifestly the duty of the courts to see to it that justice is not allowed to fail, and that no one is denied the opportunity of asserting his rights under the law because he is an object of charity; but it is equally their duty not to encourage unnecessary and fruitless litigation, or to allow the public treasury to be opened merely to harass persons against whom speculative claims in which no merit is apparent may be asserted. The defendant may have been unable to endure such an unequal contest." 124 Ind. at 466.

The spirit of these enactments would clearly condemn a legal system as unfair and unjust, which would deny a person

a legal remedy simply because of the inability to pay a few dollars court costs. Although Indiana's adherence to this policy has been clear and unswerving, it alone does not provide a basis for a decision in this case.

Turning to the letter of the statute involved, we see that the category of cases in which a judge is authorized to grant an exemption to an indigent person is stated as "any civil action". The divorce actions sought by appellants were civil actions, and, therefore, appellants were entitled to the benefits supplied by this statute. Both trial judges construed this statute in this manner.

The exemption and its extent are defined in the following language of § 49-1305(b):

> "Any person . . . may, upon order of the court, commence any such action . . . without being required *to make the payment provided for by section 1 (§ 49-1305a) of this act* . . . upon filing . . . a statement. . . ." (Emphasis added.)

Section 49-1305(a) referred to above specifically classifies the following items as court costs:

> $7.00 docket fee payable to the State
> $6.00 clerk service fee payable to County
> $6.00 advance payment on Sheriff's costs
> $2.00 to defray postage when making service of process by mail
> Such *other court costs* as the trial judge may order to be paid in advance.

Construing §§ 49-1305(a) and 49-1305(b) together in order to give them a harmonious meaning, as we are bound to do, it is clear that if the cost of publishing a summons is a "court cost" within the meaning of § 49-1305(a), then it is a court cost which these appellants were entitled to be relieved of paying under the authority of § 49-1305(b). The *ejusdem generis* rule is clearly suitable here in determining the intended meaning of the phrase "other court costs". That rule has been defined as follows:

"The rule undobtedly is that where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute." *Wiggins* v. *State* (1908), 172 Ind. 78, 80, 87 N. E. 718.

See also *Dunkle* v. *State* (1906), 241 Ind. 548, 173 N. E. 2d 657; *State ex rel. Milligan* v. *Ritter's Estate* (1943), 221 Ind. 456, 48 N. E. 2d 993.

In § 49-1305(a), the general term "other court costs" is preceded by a statement of specific docket, clerk and sheriff's costs and the cost of postage. The statutory authority of the trial court to waive these specific costs is clear. These specific court costs are similar in practically every respect to the cost of publishing a summons. They are alike in that they are made mandatory and necessary by statute and are in no sense avoidable at the option of a party. As stated earlier, the requirement that a summons be published and the consequent cost of that publication is mandated by the divorce statute (Burns § 3-1206, *supra*) in a case of this type. They are alike in that they are a charge made for a similar legal service. The legal function served by publishing a summons is essentially the same as that served by the sheriff when delivering a summons, or that served by the postman when delivering a summons by mail; that function being to effectuate service of process upon a defendant, and to thereby vest jurisdiction in the court to entertain the suit. The fact that a newspaper is not a court official in the same sense that a sheriff or clerk is, has no legal consequence here. There are no relevant differences in this regard between a newspaper and the postal department. Both are third parties, separate from the court. Both provide a service to the court and litigants for money. And there is no doubt that the cost of postage to mail a summons is a "court cost" and that a trial court may waive the cost. Since the cost of publication

is in the same class as cost of mailing a summons, it is included within the general phrase "other court costs" in § 49-1305(a). Without attempting to make a complete definition of the term "other court costs" as it appears in this statute, we hold that the trial courts of this State have been empowered by the Legislature by Burns § 49-1305(b) to waive the cost of publishing summonses in divorce cases, and the refusal to do so in these cases on appeal was error.[1]

We are aware that some practical problems will arise from this decision for those trial courts who have not heretofore interpreted their statutory powers to extend to exempting indigent persons from paying costs of publishing summonses as we have done today. From the statutory authority to relieve an indigent person from paying the cost of publishing a summons, or paying the cost of mailing a summons, the corollary authority necessarily arises in the courts to make that exemption meaningful and to require that these costs be paid from public funds when necessary to permit an indigent person access to our courts and the legal remedy they afford. We also perceive that there are alternatives open to trial courts when faced with the practical problem of providing publication of a summons for indigent persons. For instance, a trial court has authority under TR. 4.14(B) to provide alternative forms of construction notice so long as they meet the requirements of due process:

> "Upon application of any party the court in which any action is pending may make an appropriate order for service in a manner not provided by these rules or statutes when such service is reasonably calculated to give the defendant actual knowledge of the proceedings and an opportunity to be heard."

This rule is expressive of the inherent powers retained by courts to improvise new methods of making service within

---

1. Although we decide this case on State statutory grounds, we note that when faced with a similar case the United States Supreme Court, in *Boddie* v. *Connecticut* (1971), 401 U. S. 371, 91 S. Ct. 780, held that the result was constitutionally required.

the confines of due. process, where such improvisation is necessary to do justice in an individual case. *State ex rel. Brubaker* v. *Pritchard* (1956), 236 Ind. 222, 138 N. E. 2d 233. In *Boddie* v. *Connecticut* (1971), 401 U.S. 371, 91 S. Ct. 780, the Supreme Court in a divorce case identical to the ones before us, (decided however on constitutional rather than statutory grounds) suggested that notice by mailing to the last known address coupled with posting would not offend the requirements of due process and would therefore be a suitable alternative to publication. They said:

"In the same vein we think that reliable alternatives exist to service of process by a state-paid sheriff if the State is unwilling to assume the cost of official service. This is perforce true of service by publication which is the method of notice least calculated to bring to a potential defendant's attention the pendency of judicial proceedings. See Mullane v. Central Hanover Bank & Trust Co., *supra.* We think in this case service at defendant's last known address by mail and posted notice is equally effective as publication in a newspaper." 401 U.S. at 382.

These two cases are now remanded to the trial courts, and said trial courts are ordered to set aside their former orders in their entirety, to permit the petitioner to re-submit their petitions for further proceedings not inconsistent with this opinion.

Hunter and Prentice, JJ., concur; Givan, J., concurs in the case of Smith and dissents in the case of Thompson; Arterburn, C.J., dissents with opinion.

## DISSENTING OPINION

ARTERBURN, C.J.—I am compelled to dissent from the majority opinion of this court in these cases because of its utter disregard for certain basic principles of the Indiana Rules of Procedure. I am frankly shocked that a majority of this court has seen fit to reach out and give recognition and standing to these two cases as "appeals" when there is no

basis under our Rules for their consideration as an appeal. These "appeals" come before us upon the mere denial by two trial courts of a petition to have publication costs paid from public funds in a divorce case on the ground that the whereabouts of the husband is unknown.

Our Rules require that an appeal may be taken only from a *final judgment* after a timely filed motion to correct errors has been overruled, or from an interlocutory order (where no motion to correct errors is necessary), such judgment or order having been issued in favor of one of the parties, after each has been afforded an opportunity to appear in the case and be heard. See Indiana Rules of Procedure, Rule AP. 4 (A).

It would be contradictory of the basic rules of procedure to permit the immediate appeal from every ruling of the trial court, thereby condoning piecemeal appeals. The one exception to the rule of appealing only from a final judgment is with respect to appeals from certain specified interlocutory orders, and the other types of orders specified in TR 59 (g). For a discussion of such appeals see: *Richards* v. *Crown Point Community School Corp.* (1971), 256 Ind. 347, 269 N. E. 2d 5.

Here we do not have any semblance of a final judgment, nor does the denial of the petition for costs of publication come within any specified interlocutory order or other orders, as defined in our rules or in any statute.

Hundreds of times this court has reiterated not only that the parties to the appeal are bound by our Rules, but *that this court, likewise, is also bound by its own Rules.* It is dismaying to see this principle violated by this court. Our Rules mean nothing if this court violates them. The ruling does not end the divorce cases. They are still pending.

If it be argued that these appellants (without any appellees in fact) are entitled to a remedy and that they, because of their pauper status, should not be deprived of their right

to sue for divorce because of an allegedly erroneous ruling by the trial court, then the trial court is, in fact, the real party in interest at this point. If a trial court refuses to perform or act where the rights are plain, then *a mandate action is the remedy,* and this court is open for that purpose without delay to hear both sides and to mandate the trial court in a proper case. This is the answer to the plea that the courts should be open to the parties here.

In one of these cases a complaint is not filed, nor is there present any affidavit stating that the residence of the husband is unknown, although a request for publication because of pauperism is made. A motion to correct errors is filed in only one case, although there is no proper judgment. These are only a few matters which a quick review of these cases reveals. Yet, the majority sloughs off these violations of the Rules and considers each case to be an appeal from a final judgment. If it is really an "appeal" from a final judgment, it should go to the Court of Appeals and not to the Supreme Court under our Rules, since these cases apparently involve merely a matter of statutory interpretation under the majority opinion. This is yet another reason why we should not entertain this "appeal" among others too numerous to list here.

As to the merits of this case, it holds in effect that any poor person desiring a divorce for any reason can make the taxpayers pay for it, including paying for an attorney at public expense. The taxpayers are at the mere whim of an indigent who may desire a divorce without any showing of necessity therefore. Under the Rules, not only is pauperism a necessary element to secure taxpayers aid, but also necessary are meritorious grounds for the relief. It is unthinkable that we have a doctrine that every pauper should receive out of the public treasury according to his desires and *not according to his needs.* Here, so far as this opinion is concerned and the facts in this case, *mere desire* is sufficient to compel a draft upon the public treasury without any showing of *merito-*

*rious need.* This creates two classes of persons, paupers who can have anything they desire according to their whim and those who are not paupers who can not have what their unlimited desire or whim may envision.

The majority makes no attempt to limit requests by poor persons for aid based on necessity. The majority cites and quotes from the case of *Hoey* v. *McCarthy* (1890), 124 Ind. 464; that case in fact holds that a poor person asking for a waiver of costs must show meritorious grounds exist in addition to showing poverty. That court stated:

> "The court must be satisfied that the petitioner has not sufficient means to prosecute the action; more than that, the court ought to be satisfied that the claim upon which the action is predicated is a *meritorious one.*" (our emphasis) Id. at 466.

That case further states that although it is a duty of the courts to see that meritorious claims and defenses do not fail for lack of funds to support them, yet, it is equally their duty "not to encourage unnecessary and fruitless litigation, or to allow the public treasury to be opened merely to harass persons against whom speculative claims in which no merit is apparent may be asserted." *Id.* at 466-67.

Courts certainly should not encourage, nor should they permit attorneys to encourage litigation. I have a feeling that this majority opinion does just that.

I do not mean to say that the courts are not open to an indigent who shows a need and necessity for assistance in pursuing a remedy and that such indigent in such a case is not entitled to assistance out of the public treasury. But, I do say that the procedure and method used here violates our Rules for entertaining the matter. In addition, there is a failure to show a necessity and need for the assistance on meritorious grounds. Such draft on the public treasury can not be left to the mere whim, wish or desire of a person based merely on the showing of indigency alone.

I feel that this court should have the fortitude, when its attention is called to a lack of jurisdiction for an appeal and a failure to comply with any Rules of this court, to dismiss these appeals and not reach out, apparently with eagerness, to render an opinion in a matter which is really not before us. With a backlog of cases in this court in which we have jurisdiction, our time could be better spent on cases properly in this court which are being delayed for decision.

NOTE.—Reported in 286 N. E. 2d 657.