**In the Matter of M.R., W.D., and C.J.**

**No. 2–782–A–197.**

Court of Appeals of Indiana,
Second District.

Sept. 6, 1983.

Susan K. Carpenter, Public Defender, Frances L. Watson, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Appellant-respondent D.G.B. (Mother) appeals a judgment from the Jay County Circuit Court, Juvenile Division, contending the evidence was insufficient to support a determination that her minor children are children in need of services (CHINS).

We dismiss.

## FACTS

This proceeding began after the Jay County Department of Public Welfare (DPW) received complaints that Mother had left her children with babysitters for long periods of time without leaving food, clothing, or money for their care. After tracing Mother's activities for a period of about one week in early November, 1981, DPW took the children into custody, and at a later probable cause hearing, the trial court authorized the filing of a formal CHINS petition.[1]

The trial court entered a lengthy "Order On Fact Finding Hearing" with detailed findings of fact in which it found that all three children were children in need of services and appointed the Public Defender of Indiana to "represent the respondent, [Mother,] for the purpose of any appeal whether interlocutory or final in this action." *Record* at 47. Mother brought this appeal directly from the factfinding CHINS hearing and prior to the dispositional hearing required by IC 31–6–4–16.

## ISSUE

We raise, *sua sponte,* the following issue to dispose of this case:

1. DPW relied upon the following provisions of Ind.Code 31–6–4–3 (1982):
   "A child is a child in need of services if before his eighteenth birthday:
   (1) his physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of his parent, guardian or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; [or]
   (2) his physical or mental health is seriously endangered due to injury by the act or omission of his parent, guardian, or custodian;

   . . . .
   and [he] needs care, treatment, or rehabilitation that he is not receiving, and that is unlikely to be provided or accepted without the coercive intervention of the court."
   Although the formal petition did not cite the code section defining a child in need of services as required by IC 31–6–4–10, there appears to be no dispute that DPW relied upon the language quoted above. "Error in a citation or its omission is ground for dismissal of the petition or for a reversal of the adjudication only if the error or omission misleads the child or his parent . . . to his prejudice." IC 31–6–4–10(d).

Is this court without jurisdiction because Mother has not taken an appeal from a final, appealable judgment?

## DECISION

CONCLUSION—The trial court's CHINS order, which declared that Mother's children were children in need of services, is not a final, appealable judgment.

Initially, we observe that the trial court's finding at the CHINS hearing was not an appealable interlocutory order. The court did not follow the procedure for certification of interlocutory orders prescribed in Ind. Rules of Procedure, Appellate Rule 4(B)(6),[2] and this case does not fall within the definitions of designated appealable interlocutory orders in AR 4(B)(1)–(B)(5). So we must decide whether a CHINS factfinding hearing is a *final* decree or judgment from which an appeal may be taken.

In enacting IC 31–6–4–14 [hereinafter cited as the factfinding hearing statute], the legislature provided that "[i]f the court finds that the child is a delinquent child or a child in need of services, *it shall enter judgment* accordingly, order a predisposition report, and schedule a dispositional hearing." (Emphasis supplied).[3] The use of the word "judgment" is misleading, probably inadvertent. In interpreting this language, we pierce the legislative semantic veil to conclude that what has been described is really an interlocutory order.[4]

That is precisely the position this court took in *N.J.R. v. State,* (1982) Ind.App., 439 N.E.2d 725. Because the factfinding hear-

ing statute applies to delinquency proceedings as well as CHINS hearings, the court in *N.J.R.* was faced with the similar question of whether a "judgment" of delinquency was a final, appealable judgment. The court concluded that it was not, observing that something more was left to be done. After a child is found to be a delinquent under the factfinding hearing statute, the trial court is required to schedule and later hold a dispositional hearing to consider, among other things, "alternatives for the care, treatment, or rehabilitation for the child." IC 31–6–4–16 [hereinafter cited as the dispositional hearing statute]. Tracing the statutory scheme that appeals in juvenile proceedings "may be taken as provided by law", IC 31–6–7–17, and that the criminal rules apply to delinquency actions, IC 31–6–7–1(a), Judge Shields concluded that orders in delinquency proceedings were not final, appealable judgments until after disposition. Reliance was placed upon CR 16 which provides that a motion to correct error is to be filed sixty days from "sentencing". *See also Clanton v. State,* (1974) 159 Ind.App. 603, 308 N.E.2d 726; *Spall v. State,* (1973) 156 Ind.App. 189, 295 N.E.2d 852. *Cf. State ex rel. Neal v. Hamilton Circuit Court,* (1967) 248 Ind. 130, 134, 224 N.E.2d 55, 58 (no appealable final judgment in contempt actions "until the court has proceeded to attach and punish the defendant for contempt by fine or imprisonment").

The *N.J.R.* case provides strong support for our position that determinations of CHINS status are not final, appealable

---

**2.** Appeals may be taken from interlocutory orders if the trial court certifies and the court of appeals finds that

   "(a) The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination thereof is withheld until after judgment, or

   (b) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case, or

   (c) The remedy by appeal after judgment is otherwise inadequate."

AR 4(B)(6). *See also* TR 54(B) (judgment as to fewer than all of the claims or parties) and TR 56(C) (partial summary judgment).

**3.** *See also* IC 31–6–4–13 (if a child alleged to be a delinquent admits the allegations of the petition at his initial hearing, "the juvenile court *shall enter judgment* accordingly and schedule a dispositional hearing") (emphasis supplied); IC 31–6–4–13.5 (if the allegations of a CHINS petition are admitted at the initial hearing, "the juvenile court *shall enter judgment* accordingly and schedule a dispositional hearing") (emphasis supplied).

**4.** *See Stanray Corp. v. Horizon Construction Inc.,* (1976) 168 Ind.App. 164, 174, 342 N.E.2d 645, 652 (trial court's choice of words in ordering "judgment" in its entry was "unfortunate"; decision was merely interlocutory).

judgments prior to disposition. The statutory scheme for CHINS proceedings is nearly identical to that for delinquency actions. Children alleged to be delinquents and children alleged to be children in need of services follow a similar course through the juvenile justice system beginning with a preliminary inquiry by an intake officer,[5] proceeding to a probable cause hearing at which the trial court authorizes the filing of a formal petition,[6] appearing at an initial hearing[7] and then at a factfinding hearing,[8] and, finally, discovering their ultimate fate at a dispositional hearing.[9]

One significant difference between delinquency and CHINS proceedings is that the criminal rules apply to delinquency proceedings while our civil trial rules apply to CHINS actions. *See* IC 31-6-7-1(c). Thus, although the *N.J.R.* case provides an appropriate analogy to the case before us, we must also find support for our position in the civil case law and the mandate of TR 59(C) that motions to correct error shall be filed not later than sixty days after the entry of a "final judgment or an appealable final order."

Turning to the civil rules, we find that the term "judgment" includes "a decree and any order from which an appeal lies." TR 54(A). And a perusal of case law demonstrates that the determination of what constitutes a final, appealable judgment has been undertaken on a case-by-case basis. One overriding principle, however, can be derived from the case law: Judicial economy prohibits the appeal of trial court action until it is finally and completely at an end. We believe that element of completion of trial court action is absent at the time a court enters a CHINS order after a factfinding hearing.

■ Final judgments or decrees finally determine all the rights of the parties and

put an end to the particular case. *In re Custody of Helwig,* (1982) Ind., 442 N.E.2d 1035; *Thompson v. Thompson,* (1972) 259 Ind. 266, 286 N.E.2d 657; *State ex rel. City of Fort Wayne v. Allen Circuit Court,* (1967) 244 Ind. 293, 191 N.E.2d 98; *Department of State Revenue, Inheritance Division v. Estate of Callaway,* (1953) 232 Ind. 1, 110 N.E.2d 903; *Vinson v. Rector,* (1960) 130 Ind.App. 606, 167 N.E.2d 601. An order of the court " 'requiring something to be done or observed, but not determining the controversy, is an interlocutory order.' " *Vinson, supra* at 609, 167 N.E.2d at 603 (quoting *Pfeiffer v. Crane,* (1883) 89 Ind. 485, 487). Thus, in a recent case, our supreme court proclaimed the rule applicable to our situation:

> " 'A final judgment is one which disposes of the subject matter of the litigation as to the parties *so far as the court in which the action is pending has power to dispose of it.*' "

*In re Custody of Helwig, supra* at 1038 (quoting *Kalleres v. Glover,* (1935) 208 Ind. 472, 478, 196 N.E. 679, 682). Terminology may be confusing. Sometimes what is denominated an "order" may really be a final judgment and vice versa. *See Thompson, supra; Stanray Corp., supra.* The focus is on what is actually done. A rose by any other name is still a rose.

■ The CHINS factfinding order has not completely disposed of the subject matter of the present litigation. Having determined that Mother's children were children in need of services, the trial court was required to hold a dispositional hearing. It is at that hearing that the trial court will determine what is to be done with the children. The finding of CHINS status is a mere preliminary step to be taken prior to choosing among several different dispositional alternatives.[10] That choice finally determines the rights of the parties, espe-

5. *Compare* IC 31-6-4-7 *with* IC 31-6-4-8.

6. *Compare* IC 31-6-4-9 *with* IC 31-6-4-10.

7. *Compare* IC 31-6-4-13 *with* IC 31-6-4-13.5.

8. *See* the factfinding hearing statute.

9. *See* the dispositional hearing statute.

10. "The juvenile court may:
(1) order supervision of the child by the probation department or the county department;
(2) order the child to receive out-patient treatment at a social service agency, psychological, psychiatric, medical, or educational facility, or from an individual practitioner;

cially in light of the specific guidelines set down in the dispositional hearing statute [11]—guidelines which may prove to support a later appeal. It is after disposition that a final, appealable judgment exists, and Mother's present appeal is merely interlocutory and should be dismissed.

Because we foresee the possibility of a future appeal, we will comment briefly on the merits of Mother's argument. In support of its assertion that her children were children in need of services, DPW presented evidence at the CHINS hearing that (1) Mother did not have a place of residence and had moved frequently; (2) Mother had spent a great deal of time in a tavern and left her children with babysitters; (3) Mother sometimes did not give babysitters food, clothing, or money for the children's care, although the babysitters were either friends or relatives who did feed and clothe the children; (4) the children had some minor health problems; and (5) the two oldest of Mother's children exhibited unusual sexual behavior, and when questioned, the children stated that their mother and her boyfriend permitted and participated with them in such conduct. This evidence supports the findings of fact made by the trial court, and we cannot say that the conclusion drawn from those facts is either illogical or unreasonable. *See McCarthy v. McCarthy,* (1980) Ind.App., 401 N.E.2d 759; *Watson v. Department of Public Welfare,* (1960) 130 Ind. App. 659, 165 N.E.2d 770.[12]

Although Mother's children were fed and clothed by their babysitters, the CHINS statute provides that a child may be endangered by a lack of parental supervision—and parental supervision is what Mother's children lacked. Having concluded that Mother's actions were detrimental to her children's well-being, the trial court was entitled to believe that such conduct would continue in the absence of court intervention. There is no indication that the trial court abused its discretion in so concluding.[13]

Appeal dismissed.

SHIELDS and SULLIVAN, JJ., concur.

---

(3) remove the child from his home and place him in another home or shelter care facility (placement under this subdivision includes authorization to control and discipline the child);

(4) award wardship to any person or shelter care facility (wardship under this subdivision does not include the right to consent to the child's adoption); or

(5) partially or completely emancipate the child if it finds that the child:

(A) wishes to be free from parental control and protection and no longer needs that control and protection;

(B) has sufficient funds to support himself;

(C) understands the consequences of being free from parental control and protection; and

(D) has an acceptable plan for independent living."

IC 31–6–4–16(e).

**11.** *See, e.g.,* IC 31–6–4–16(d):

"When consistent with the safety of the community and the welfare of the child, the juvenile court shall enter a dispositional decree that:

(1) least interferes with family autonomy;

(2) is least disruptive of family life;

(3) imposes the least restraint on the freedom of the child and his parent, guardian, or custodian; and

(4) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian."

**12.** Decided under the prior "neglected child" statute, IC 31–5–7–6 (1976).

**13.** Mother cites *Easterday v. State,* (1970) 254 Ind. 13, 256 N.E.2d 901, in an attempt to cast doubt upon the foster mother's revelations concerning the children's unusual sexual behavior. To the extent that *Easterday* questioned the competency of young complaining witnesses concerning sexual matters, we need only observe that Mother's children did not testify and that no objection was made to the foster mother's hearsay statements. Mother's belated argument on her motion for judgment on the evidence left the evidence before the trial court for its consideration, and her hypothesis that the statements described by the foster mother were "imaginative acts of young children, perhaps triggered by a change of environment suddenly thrust upon them," *appellant's brief* at 36, goes to the weight and credibility of the statements which were for the trial court to determine.