

FILED

May 19 2016, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle L. Gregory
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of:
R.H. *(Minor Child)*
　　*Child in Need of Services*
　　and
T.H. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

May 19, 2016

Court of Appeals Case No.
49A04-1509-JC-1402

Appeal from the Marion Superior
Court

The Honorable Marilyn Moores,
Judge

The Honorable Gary Chavers,
Judge Pro-Tem

The Honorable Danielle Gaughan,
Magistrate

Trial Court Cause No.
49D09-1411-JC-2664

**Robb, Judge.**

# Case Summary and Issue

[1] R.H. was adjudicated a child in need of services ("CHINS") shortly after her birth. During the CHINS proceedings, the Marion County Department of Child Services ("DCS") filed a motion seeking an order that reasonable efforts to reunify R.H. and T.H. ("Mother") were not required. The juvenile court issued such an order on August 17, 2015, and thereafter held a permanency hearing on September 15, 2015, and changed the permanency plan for R.H. from reunification to adoption. Mother appeals the no reasonable efforts order, raising one issue for our review: whether the juvenile court's order finding that reasonable efforts to reunify the family are not required violated her rights under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA Section 504"). Concluding the juvenile court did not violate Mother's rights in finding DCS was not required to make reasonable reunification efforts, we affirm.

# Facts and Procedural History

[2] Mother gave birth to R.H., her eleventh child, on November 2, 2014.[1] None of Mother's children are in her custody. Her parental rights to two of her children were involuntarily terminated in 2006 and 2007, respectively, and at least three of her children were adopted by others. At the time of R.H.'s birth, a CHINS

---

[1] R.H.'s father, D.C., signed a consent to her adoption during the CHINS proceedings and does not participate in this appeal.

proceeding was in progress with regard to two of Mother's other children. Mother had no permanent residence, instead residing in various motels with her mother and step-father, and she had not been employed since 2007.

[3] DCS took R.H. into custody immediately after her birth and filed a petition alleging R.H. was a CHINS five days later. Following a joint initial and detention hearing, the juvenile court determined that "it is contrary to [R.H.'s] welfare to remain [in] the care [of Mother]" and that "reasonable efforts have been made to prevent or eliminate the need for removal based on the numerous services offered [to Mother] in other cases . . . ." Transcript at 8. The juvenile court therefore ordered R.H.'s continued placement in foster care with supervised parenting time between Mother and R.H. DCS recommended Mother complete clinical and parenting assessments and cooperate in home-based case management and therapy. Mother began weekly therapy and supervised visits in late 2014 or early 2015.

[4] The juvenile court held a fact-finding hearing on April 21, 2015, at which Mother did not appear. DCS stated at the beginning of the fact-finding hearing that it intended to file a motion seeking a reasonable efforts exception. Several DCS service providers testified, including family case managers Ashley Butler-Panter and Alice Mann, and Mother's therapist and visitation supervisor, Tammy Bush. Mother had completed the parenting assessment with Bush, although Bush testified she "didn't really get a lot of information out of the assessment" due to Mother's inability to focus and answer questions. *Id.* at 49. Mother was also participating in therapy with Bush, but Bush felt that although

continued therapy might help Mother function better in her own life, it would not assist Mother in learning to take care of her children. Bush described Mother as "very loving towards [R.H.]" during visitation, but expressed concerns about Mother's lack of awareness of safety issues (such as needing to be reminded at each visit to use the belt on the changing table when changing R.H.'s diapers), her inability to multitask (such as managing R.H. while also handling diapers and wipes), and her difficulty judging things such as when and how much R.H. needs to eat. *Id.* at 53-54. Ultimately, Bush did not feel continued services would lead to reunification:

> [S]he's been involved with DCS for a very long time and . . . you guys have offered her multiple services over the years that haven't been successful because she's chosen not to follow through and she feels that she can do it herself. In some ways she's very street wise. In some ways, she's very innocent. But the bottom line is she's homeless. She has no money. She has no job. She doesn't want to apply for SSI. She doesn't want our help with her case work. She doesn't want our help with finding a job or filing for SSI.

*Id.* at 71. At the conclusion of the hearing, the juvenile court adjudicated R.H. a CHINS.

[5] On May 7, 2015, DCS filed a Motion for No Reasonable Efforts Exception. The motion alleged the parent-child relationship between Mother and two of R.H.'s half-siblings had been involuntarily terminated, two of Mother's children had been placed in the custody of their fathers, and six of Mother's children had been adopted. The motion requested the juvenile court find that reasonable

efforts to reunify Mother with R.H. were not required pursuant to Indiana Code section 31-34-21-5.6(b)(4) and (5). The juvenile court held a hearing on the motion over two days in June 2015 and a third day in August 2015. Bush testified much as she had at the fact-finding hearing that although Mother was "very loving and very kind" during visitations with R.H., she has to be reminded of the same things every week, such as using the belt on the changing table and feeding R.H. appropriately. *Id.* at 96. "She tries really hard but it is just her knowledge and her skills aren't good enough to parent safely on her own." *Id.* at 97. Although Mother had been briefly employed during these proceedings, by the final day of the hearing, she was no longer employed, she was still moving from place to place, and it remained difficult for service providers and case workers to reach her on any given day. Bush did not believe, whether services continued for six months or a year, that Mother would ever have the skills and judgment to care for R.H. At the conclusion of the hearing, the juvenile court took the matter under advisement and set a hearing for September that would either be a dispositional hearing or a permanency hearing depending on the court's ruling on DCS's motion for a reasonable efforts exception.

[6]     On August 17, 2015, the juvenile court entered an order granting DCS's motion, finding that reasonable efforts to reunify Mother and R.H. are not required because

> Mother has been repeatedly offered services with regard to [R.H.]
> and with regard to her older children. Services have repeatedly

closed unsuccessfully because of Mother's lack of participation or inability to make progress. Additionally, Mother has cognitive limitations that inhibit her ability to make progress in the therapy she has recently participated in. Mother has been homeless for at least two and a half years and has been unemployed since 2007 until recent employment at McDonald's. Mother is no longer employed and her housing continues to be unstable. Mother has resisted the efforts of service providers to assist her with locating housing and applying for disability.

Appendix of Appellee at 4. The juvenile court suspended Mother's parenting time and set a permanency hearing for September 15, 2015.

Following the permanency hearing, the juvenile court issued an order changing the permanency plan from reunification to adoption. Mother filed a notice of appeal the same day.

# Discussion and Decision

## I. Appealable Order

The sole issue raised by Mother on appeal is whether the juvenile court erred in granting DCS a reasonable efforts exception. DCS asserts that Mother's appeal is premature and should be dismissed because there is not yet a dispositional order.

A CHINS proceeding is initiated when DCS requests the juvenile court authorize the filing of a petition alleging the child is a CHINS. Ind. Code § 31-34-9-1. The juvenile court must authorize the filing of a petition if it finds

probable cause to believe the child is a CHINS. Ind. Code § 31-34-9-2. Unless the parents admit the allegations of the petition, the juvenile court must hold a fact-finding hearing within sixty days. Ind. Code § 31-34-11-1. If the court finds that a child is a CHINS, it must enter judgment accordingly, order a predisposition report, and schedule a dispositional hearing. Ind. Code § 31-34-11-2. The dispositional hearing is to be held within thirty days of finding the child is a CHINS. Ind. Code § 31-34-19-1(a). At the dispositional hearing, the court must consider the alternatives for the child's care, treatment, rehabilitation, or placement and the necessity, nature, and extent of the parent's participation. *Id.* The juvenile court must enter written findings and conclusions in its dispositional decree and may, among other things, order supervision of the child by DCS, place the child in another home, award wardship of the child to DCS, or order the child's parents to complete family services recommended by DCS. Ind. Code §§ 31-34-19-10; 31-34-20-1. Periodic review and permanency hearings must be conducted. Ind. Code §§ 31-34-21-2 (review hearings at least every six months); 31-34-21-7 (permanency hearings at least every twelve months). Ordinarily, DCS is required to make reasonable efforts during the CHINS proceedings to preserve or reunify the family. Ind. Code § 31-34-21-5.5. At any phase of a CHINS proceeding, however, the juvenile court may make a finding that reasonable efforts to reunify a child with her parent are not required. Ind. Code § 31-34-21-5.6.

[10] We have held that the dispositional decree is the final appealable order from a CHINS proceeding because it finally determines the rights of the parties. *In re*

*J.V.*, 875 N.E.2d 395, 399 (Ind. Ct. App. 2007), *trans. denied*. All the other proceedings are "mere preliminary step[s]" to the juvenile court determining at a dispositional hearing what is to be done with the children. *In re M.R.*, 452 N.E.2d 1085, 1088 (Ind. Ct. App. 1983); *see also Smith v. Marion Cnty. Dep't of Pub. Welfare*, 635 N.E.2d 1144, 1148 (Ind. Ct. App. 1994) ("[T]he time for appealing an issue in a CHINS proceeding commences when the dispositional decree is entered."), *trans. denied*. However, in *M.R.*, we also noted "[t]erminology may be confusing. Sometimes what is denominated an 'order' may really be a final judgment and vice versa. The focus is on what is actually done. A rose by any other name is still a rose." 452 N.E.2d at 1088 (citations omitted).

[11] The State is correct that there is no specific dispositional order in the record of this case nor does the chronological case summary reflect that a specific dispositional hearing had been held at the time the juvenile court found DCS was not required to make reasonable efforts to reunify the family. It is unclear why this is, as the juvenile court is statutorily required to hold a dispositional hearing within thirty days of a CHINS finding. *See* Ind. Code § 31-34-19-1. R.H. was formally adjudicated a CHINS on April 21, 2015.[2] The order Mother

---

[2] The juvenile court's order on the fact-finding hearing set an "Other" hearing for June 1, 2015, a date which exceeds thirty days from the finding that R.H. is a CHINS. Appellant's Appendix at 27. On June 1, 2015, the juvenile court held the first day of a three-day hearing on the DCS motion for a reasonable efforts exception. At the conclusion of the reasonable efforts hearing in August 2015, the juvenile court said it would set either a dispositional or a permanency hearing depending on its ruling on the DCS motion, implying no dispositional hearing had yet been held. The order granting DCS's motion set a permanency hearing. And yet, the juvenile court's order on the permanency hearing states:

appeals was issued on August 17, 2015, well over thirty days after the CHINS finding with no apparent dispositional hearing having been held. Nonetheless, we look to the effect of the orders the juvenile court had entered prior to Mother's notice of appeal. The juvenile court had already determined that R.H. was under the wardship of DCS and that she was to be placed in foster care. The no reasonable efforts order, in addition to finding that DCS was not required to make reasonable efforts to reunify Mother and R.H., suspended Mother's visitation with R.H. The permanency order changed the permanency plan from reunification to adoption. In short, whether or not there is an order denominated a "dispositional decree" in the record, the juvenile court's orders as a whole serve the purpose of a dispositional decree and further, effectively end the relationship between Mother and R.H. and allow DCS to move

---

> The Court having considered the questions as to whether or not it should continue jurisdiction and whether the dispositional decree should be modified now finds that it is in the children's [sic] best interest for the Court to continue jurisdiction. The Court further determines *that the dispositional decree should not be modified.*

Appellant's App. at 109 (emphasis added).

forward with termination proceedings.[3]  If Mother is not allowed to appeal this issue now, she may never be able to.  *See Smith*, 635 N.E.2d at 1148 (holding that because the mother did not appeal the issue of whether she was entitled to court-appointed counsel in a CHINS proceeding until following termination proceedings, she had waived the issue).   Thus, whether or not the court's orders are technically a final judgment, they operate as one, and consequently, we will consider Mother's argument.

## II.  Reasonable Efforts Exception

[12]  Indiana Code section 31-34-21-5.6 was enacted in response to the Adoption Assistance and Child Welfare Act, which authorizes federal subsidies to states for their operation of child welfare programs, conditioned on certain requirements.  *G.B. v. Dearborn Cnty. Div. of Family & Children*, 754 N.E.2d 1027, 1030 (Ind. Ct. App. 2001), *trans. denied*.  One of the requirements for a state to be eligible for federal payments is that it have a plan which provides that

---

[3]  A petition to terminate the parent-child relationship must allege, among other things, that one of the following is true:

> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> *(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.*
> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being allege to be a child in need of services or a delinquent child . . . .

Ind. Code § 31-35-2-4(b)(2)(A) (emphasis added).

reasonable efforts to reunify a parent and child shall not be required if a court has previously determined the parental rights of the parent to a sibling of the child should be involuntarily terminated. 42 U.S.C. § 671(a)(15)(D)(iii). Accordingly, Indiana Code section 31-34-21-5.6 provides that reasonable efforts to reunify a child with the child's parent are not required if the court finds the "parental rights of a parent with respect to a biological or adoptive sibling of a child who is a child in need of services have been involuntarily terminated by a court order . . . ." Ind. Code § 31-34-21-5.6(b)(4). DCS alleged in its motion for a reasonable efforts exception that Mother's parental rights to two of R.H.'s biological half-siblings had been involuntarily terminated, one in 2006 and one in 2007.[4] The juvenile court determined that, due to the prior terminations, reasonable efforts to reunify Mother and R.H. were not required. Mother does not dispute the CHINS adjudication was based on sufficient evidence, nor does she dispute her history of parental rights' terminations provides an adequate basis for the juvenile court to find that reasonable reunification efforts were not required. She argues, however, that the juvenile court's order relieving DCS of the obligation to provide reunification services unlawfully discriminated against

---

[4] The motion alleges that pursuant to Indiana Code sections 31-34-21-5.6(b)(4) and (5) reasonable efforts to reunify R.H. with Mother should not be required. Section (b)(5) applies if the court finds the child is an abandoned infant and finds, after a written report and recommendation from an appointed guardian ad litem or court appointed special advocate, that reasonable efforts to locate the child's parents or reunify the family would not be in the child's best interests. There is no evidence that R.H. is an abandoned child.

her because she is entitled to reasonable accommodations for her undiagnosed disabilities in the CHINS proceedings.[5]

[13]     Mother bases her claim on the ADA and RA Section 504. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and create causes of action for qualified people who have faced such discrimination. *See* 42 U.S.C. § 12101(b). The ADA provides, in pertinent part: "[N]o qualified individual with a disability shall, *by reason of such disability*, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). The ADA requires that the public entity make "reasonable modifications" to allow the qualified person to receive services or participate in programs or activities. 28 C.F.R. § 35.130(b)(7). Similarly, RA Section 504 provides: "No otherwise qualified individual with a disability in the United States . . . shall, *solely by reason of her or his disability*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a) (emphasis added).[6]

---

[5] DCS argues Mother has waived this claim for failure to raise it to the trial court. It does not appear Mother raised this particular issue to the trial court, but given our preference for deciding cases on their merits, *Omni Ins. Grp. v. Poage*, 966 N.E.2d 750, 753 (Ind. Ct. App. 2012), *trans. denied*, we will consider Mother's argument notwithstanding any waiver.

[6] The Rehabilitation Act is addressed to discrimination against individuals with disabilities in employment opportunities, *see* 29 U.S.C. § 701(b), and defines an individual with a disability as one who has a physical or mental impairment "which for such individual constitutes or results in a substantial impediment to employment" and who "can benefit in terms of an employment outcome from vocational rehabilitation

[14]     It is true that "[o]nce [DCS] opts to provide services during the CHINS proceedings to assist parents in improving parental skills, the provision of those services must be in compliance with the ADA." *Stone v. Daviess Cnty. Div. of Children & Family Servs.*, 656 N.E.2d 824, 830 (Ind. Ct. App. 1995), *trans. denied*. Assuming Mother has a disability[7] and assuming she was otherwise eligible to receive services,[8] she would be entitled to reasonable accommodations in the provision of reunification services. In fact, Bush's testimony supports the notion that Mother's shortcomings were accommodated in these proceedings – her therapy appointments and visitations were scheduled back-to-back to improve her attendance, Bush helped her keep a calendar of appointments because she struggles with dates and times, and she was offered assistance in obtaining housing, a job, and SSI benefits, but declined. Notably, although Mother argues the failure to provide future services violates the ADA and RA Section 504, she does not argue the services she actually received failed to comply. She therefore essentially acknowledges the services DCS provided complied with the statutes. Mother was offered numerous services in her other

services" provided under the act, 29 U.S.C. § 705(20). It is unclear how RA Section 504 applies to the provision of reunification services to Mother, and she has made no individualized argument with respect to the two statutes she claims have been violated in this case. Likewise, we will not distinguish the two statutes in our discussion.

[7] Although Mother's home-based therapist testified that she "felt like [Mother has] some intellectual disabilities as well as some mental health issues," tr. at 49, there was no evidence that Mother has been officially diagnosed with a disability.

[8] For purposes of the ADA, a "qualified individual with a disability" is an individual with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, *meets the essential eligibility requirements* for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (emphasis added).

CHINS cases and in this case until the juvenile court granted the reasonable efforts exception, yet she remains unable to effectively parent.

[15] "[T]he ADA was not intended ipso facto to re-write state substantive law." *Id.* Moreover, "[e]very child is entitled to a minimum level of care regardless of the special needs or limited abilities of its parents. In the final analysis, the rights of the parents under the Fourteenth Amendment and the ADA must be subordinated to the protected rights of the children." *Id.* at 831. Here, the juvenile court determined pursuant to state statute that DCS was not required to provide services to Mother due to her previous history of parental rights' terminations. *See id.* at 830 (holding there were no grounds for challenging in a termination proceeding the alleged failure to comply with the ADA in the provision of services because services are not required by the termination statute). Neither the DCS request nor the juvenile court's finding pursuant to Indiana Code section 31-34-21-5.6 that services were not required was based on Mother's disability and she was not subjected to discrimination in the application of the statute. Any individual with Mother's history, whether under a disability or not, would be treated the same by a juvenile court applying the statute.

# Conclusion

[16] Mother was not denied services or reasonable accommodations to participate in those services because of her disability and the juvenile court did not violate her

rights by entering an order finding that DCS was not required to make reasonable reunification efforts.

[17] Affirmed.

Najam, J., and Crone, J., concur.